Mitchell B. Ludwig, Bar No. 115903
mbl@kpclegal.com
KNAPP, PETERSEN & CLARKE
550 North Brand Boulevard, Suite 1500
Glendale, California 91203-1922
Telephone: (818) 547-5000
Facsimile: (818) 547-5329

Attorneys for Plaintiff
HARRY LIFSCHUTZ, M.D., an individual

FILED
CLERK, U.S. DISTRICT COURT
JUN 30 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: KMH DEPUTY

FEE PAID

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA AND STATE OF CALIFORNIA EX REL. HARRY LIFSCHUTZ, M.D., an individual,

Plaintiff,

v.

KAYSAM GHASSEMINJEAD, an individual; KENNETH CARVER, an individual; SANDRA MAGADA, an individual; DARHIAZEL RAMIREZ, an individual; MED PLUS, a California corporation; HOSPICE CARE, INC., a California corporation; AIM HOSPICE CARE, INC., a California corporation; MERIT HOSPICE CARE INC., a California corporation; MILLENNIUM HOSPICE CARE, INC., a California corporation; BLUE HEAVEN HOSPICE & PALLIATIVE CARE, INC., a California corporation; VIP HOSPICE CARE, INC., a California corporation; RELYABLE HOSPICE CARE, INC., a California corporation; TOLUCA HOSPICE CARE, INC., a California corporation; GATES TO PARADISE HOSPICE CARE, INC., a California corporation; THOUSAND OAKS HOSPICE CARE, INC., a California corporation; MOUNT OLIVES HOSPICE, INC., a California corporation; HEALTHY LIFE HOSPICE, INC., a California corporation; BAGRAT LOBZHANIDZE aka BAGRAT LONZHANIDZE, an individual; and DOES 1-100, inclusive,

Defendants.

NO. 2:21-cv-05328-JFW-MAR

COMPLAINT OF QUI TAM PLAINTIFF HARRY LIFSCHUTZ, M.D. FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 et seq.]

DEMAND FOR JURY TRIAL

FILED IN CAMERA AND UNDER SEAL

Plaintiff Harry Lifschutz, M.D. ("Relator") is and at all relevant times mentioned herein was an individual residing in Riverside County, California, except as otherwise set forth herein and brings this action on behalf of the United States of America and the State of California for damages and penalties arising from the conduct of the following Defendants:

**The Ghasseminjead Defendants**

Med Plus, Hospice Care, Inc., a California corporation; AIM Hospice Care, Inc., a California corporation; Merit Hospice Care Inc., a California corporation; Millennium Hospice Care, Inc., a California corporation; Blue Heaven Hospice & Palliative Care, Inc., a California corporation; VIP Hospice Care, Inc., a California corporation; Relyable Hospice Care, Inc., a California corporation, Toluca Hospice Care, Inc., a California corporation (collectively the "Ghasseminjead Hospice Defendants") and Kaysam Ghasseminjead, an individual, ("Defendant Ghasseminjead", collectively with the Ghasseminjead Hospice Defendants, the "Ghasseminjead Defendants").

**The Carver Defendants**

Gates to Paradise Hospice Care, Inc., a California corporation (the "Carver Hospice Defendant") and Kenneth Carver, an individual ("Defendant Carver", collectively with the Carver Hospice Defendant, the "Carver Defendants").

**The Magada Defendants**

Thousand Oaks Hospice, Inc., a California corporation (the "Magada Hospice Defendant") and Sandra Magada, an individual ("Defendant Magada", collectively with the Magada Hospice Defendant, the "Magada Defendants").

**The Ramirez Defendants**

Mount Olives Hospice, Inc., a California corporation (the "Ramirez Hospice Defendant") and Darhiazel Ramirez, an individual ("Defendant Ramirez", collectively with the Ramirez Hospice Defendant, the "Ramirez Defendants").

////

**The Lobzanidze Defendants**

Healthy Life Hospice, Inc. a California corporation (the "Healthy Life Hospice Defendant") (Collectively the "Lobzhanidze Hospice Defendant") and Bagrat Lobzhanidze aka Begrat Lonzhanidze ("Defendant Lobzhanidze", collectively with the "Lobzhanidze Hospice Defendant, the "Lobzhanidze Defendants") (Collectively, the Ghasseminjead Defendants, Carver Defendants, Magada Defendants, Ramirez Defendants, and Lobzhanidze Defendants, the "Hospice Defendants").

The Defendants' and each of their conduct, as further alleged herein, was and is in violation of the Federal Civil False Claims Act, 31 U.S.C. § 3729, et seq., ("FCA"). The violations arise out of false claims for payment of Medicare, Medicaid, and other federal funded governmental healthcare programs (hereinafter, collectively referred to as "Government Healthcare Programs"). This action is also brought under the *qui tam* provisions of the California False Claims Act on behalf of the State of California, Government Code § 12652.

## I.

## BACKGROUND

1. "Hospice care is an approach to caring for **terminally ill** individuals that provides palliative care rather than traditional medical care and curative treatment. Palliative care is an approach that improves the quality of life of patients and their families facing the problems associated with life threatening illness through the prevention and relief of suffering by means of early identification, assessment and treatment of pain and other issues. Hospice care allows the patient to remain at home as long as possible by providing support to the patient and family, and by keeping the patient as comfortable as possible while maintaining his or her dignity and quality of life. A hospice uses an interdisciplinary approach to deliver medical, social, physical, emotional, and spiritual services through the use of a broad spectrum of caregivers." Federal Register / Vol. 73, No. 109. http://www.guo.gov/fdsys/pkg/FR-2008-06-05/pdf/08-1305.pdf. 42 C.F.R. §418 et seq.

2. Under the Social Security Act (42 U.S.C. §§ 1302 and 1395hh, et seq.), "An individual is `terminally ill' if he or she has a medical prognosis that the individual's life expectancy is 6 months or less." 42 U.S.C. § 1395x(dd)(3)(A). This definition is further clarified at 42 C.F.R. §418.3 to provide for a life expectancy of 6 months or less "if the illness runs its normal course."

3. Hospice benefits have been included under Medicare Part A since 1982, covering a range of services from pain management, bereavement counseling to a range of other palliative care services to patients who have a terminal illness and have opted to forgo curative treatment. The focus is on making a patient and their family as comfortable as possible in the **final months of life**.

4. Hospice is a multibillion-dollar nationwide industry, with extraordinary growth rates over the last decade. Medicare payments to hospice programs have increased from approximately $3 billion in 2000 to $19 billion in 2018 with additional increases year over year and average per patient payments over $12,000.

5. The percentage of hospice patients covered by the Medicare hospice benefit versus other payment sources was 87.2% in 2013. The percentage of patient days covered by the Medicare hospice benefit versus other sources was 91.2%.[1]

6. The Hospice Defendants and Does 1 through 50, inclusive are licensed hospice care providers doing business throughout Southern California and, Plaintiff is informed and believes and based thereon alleges, are either owned or controlled by one or more of the individual Defendants who are named in this complaint.

7. Plaintiff is informed and believes and based thereon alleges that for several years, the Hospice Defendants have caused thousands of false claims to be made to federal and state healthcare programs, primarily Medicare and Medi-Cal. The Hospice Defendants accomplished this by knowingly admitting and retaining patients who did not meet federal and state eligibility criteria for hospice benefits.

---

[1] http://wvvw.nhpco.oresites/default/files/publie/Statistics • Research/2014 Facts Figures.pdf

For instance, the Hospice Defendants knowingly and intentionally recruited patients who were not "terminally ill." Plaintiff is further informed and believes and based thereon states that the resulting false claims caused both the federal and state governments to pay out funds that they otherwise would not have paid and unlawfully enriched all Defendants.

8. The Hospice Defendants recruited the patients by use of various schemes including the use of paid recruiters, including someone who goes by the name of "Tina," another who goes by the name of "Angelica," and another whose name is apparently "Guillermo. A. Ramirez," each of whom conspired to solicit unsophisticated and elderly patients – often non-english speaking - to give up their regular Medicare coverage by joining their hospice program in exchange for gifts, like diapers, walkers and scooters as well as promises of expanded medical care. Two of the recruiters provided his or her business cards which advertise the services they provide. An example follows:







9. Plaintiff is a licensed medical doctor who is the treating physician for many patients who were recruited by one or more of the Hospice Defendants. Plaintiff was to be paid by Medicare for his care and treatment of the patients who are the subject matter of this action but his requests for payment were denied because his patients were the victims of the fraud and other wrongful conduct described herein below. In particular, the patients had been illegally recruited by the Defendants and placed on Hospice and removed from Medicare. Plaintiff is further informed and believes and based thereon alleges that many of their patients either

KNAPP, PETERSEN & CLARKE



4901204.1 08000/01085

never understood or were incapable of understanding that they were giving up their Medicare coverage and their doctors for hospice care. Plaintiff is further informed and believes and based thereon alleges that these patients **<u>were not terminally ill</u>** and indeed some were still employed and working or had only minor medical illnesses. For instance (the names have been eliminated to protect their right to privacy):

a. Patient "CS," was a 62 year old male with arthritis and depression and not terminal. Patient CS was recruited and signed up for one of the Hospice Defendants from November 28, 2020 until January 28, 2021 when hospice care was terminated after Plaintiff made a telephone inquiry regarding eligibility.

b. Patient "FL," was a 68 year old female with arthritis and not terminal. Patient FL was recruited and signed up for one of the Hospice Defendants from July 2020 until October 2020 when hospice care was terminated after Plaintiff made a telephone inquiry regarding eligibility.

c. Patient "MC," was an 88 year old female with few medical problems and not terminal. Patient MC was recruited and signed up for one of the Hospice Defendants from May 2020 to November 2020 when hospice care was terminated after Plaintiff made a telephone inquiry regarding eligibility.

d. Patient "FG," was a 73 year old male with minimal medical problems and not terminal. Patient FG was recruited and signed up for one of the Hospice Defendants for about two weeks when he found out and took himself off of it.

e. Patient "AM," was a 71 year old male with minimal medical problems and not terminal. Patient AM was recruited and signed up for one of the Hospice Defendants for two weeks when hospice care was terminated after he figured it out.

f. Patient "PL," was a 67 year old male with minimal medical problems and not terminal. Patient PL was recruited and signed up for one of the Hospice Defendants from July 2020 until about January 2021, when hospice care was terminated.

g. Patient "MA," was a 66 year old female with minimal medical problems and still employed. She was not terminal. Patient MA was recruited and signed up for one of the Hospice Defendants until Plaintiff made a telephone inquiry regarding eligibility.

h. Patient "RT," was a 65 year old female (sister of MA) with minimal medical problems and not terminal. Patient RT was recruited and signed up for one of the Hospice Defendants for two weeks when hospice care was terminated after Plaintiff made a telephone inquiry regarding eligibility.

i. Patient "FT," was a 65 year old male (husband of RT) with minimal medical problems and not terminal. Patient FT was recruited and signed up for one of the Hospice Defendants until terminated after Plaintiff made a telephone inquiry regarding eligibility. MA, RT and FT were all placed in different hospices.

j. Patient "ZRP," was a 67 year old female with minimal medical problems and not terminal. Patient ZRP was recruited and signed up for one of the Hospice Defendants from September 2020 until March 2021, when hospice care was terminated after Plaintiff made a telephone inquiry regarding eligibility.

k. Patient IE was an 80 year old female with diffuse arthritis whose pain was well controlled and not terminal. She was recruited and placed in hospice with one of the Hospice Defendants in or around February 2021. IE is currently trying to terminate hospice.

l. Patient JM is a 62 year old male with diabetes but not terminal. He was recruited and placed in hospice with one of the Hospice Defendants in or around November 2020. JM is currently trying to terminate hospice.

m. Patient LM is a 73 year old female with multiple medical issues but not terminal. She was recruited and placed in hospice with one of the Hospice Defendants in or around February 2021. LM is currently trying to terminate hospice.

n. Patient RR is a 78 year old female with few medical issues and not terminal. She was recruited and placed in hospice with one of the Hospice

Defendants for two different periods and then released after inquiries were made.

o. Patient AJ is a 73 year old female with no medical problems, medications or physicians and not terminal. She was recruited and placed in hospice with one of the Hospice Defendants in or around January 2020 until Mid-March 2020.

(Hereinafter, the "Victims").

## II.

## FEDERAL JURISDICTION AND VENUE

10. The acts proscribed by 31 U.S.C. § 3729 et seq., and complained of herein occurred in the Central District of California.

11. The acts alleged in this complaint were committed in this district as the Defendants' business offices are all located in Los Angeles County and primarily the San Fernando Valley. Therefore, this Court has jurisdiction over this case pursuant to 31 U.S.C. § 3732 (a), as well as under 28 U.S.C. §1345.

12. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because each Defendant does business in Los Angeles County, California. The Defendants transact business in the Central District of California and all of the acts and omissions proscribed by 31 U.S.C. §3729 et seq., occurred in the State of California.

13. This court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331 and has personal jurisdiction over the Hospice Defendants and its related entities named herein because they do business in the Central District of California.

14. The facts and circumstances alleged in this complaint have not been publicly disclosed in a criminal, civil or administrative hearing, nor in any congressional, administrative, or government accounting office report, hearing, audit investigation, or in the news media.

////

15. Relator is an "original source" of the information upon which this complaint is based, as that term is used in the False Claims Act.

## III.

## PARTIES

16. The United States funds the provision of medical care through Government Healthcare Programs such as Medicare, Medicaid, Federal Employees' Health Benefits Program, TRICARE/CHAMPUS, CHAMPVA, and other agencies and programs, acting through the Centers for Medicare & Medicaid Services ("CMS") within the U.S. Department of Health and Human Services ("RHS"), the Department of Defense, and other federal agencies.

17. The State of California funds a portion of Medicaid services and other healthcare services utilized by the Hospice Defendants as well as Medi-Cal.

18. Relator Harry Lifschutz, M.D. has dual citizenship with Canada and the United States and is a resident of the State of California. Dr. Lifschutz is a physician licensed in the State of California and is a Fellow of the American College of Surgeons (FACS) and Fellow of the Royal College of Surgeons of Canada (FRCSC).

19. The Hospice Defendants are for profit organizations and Plaintiff is informed and believes and thereon alleges that it has dozens of employees and generates annual revenue in the tens of millions of dollars, particularly from the fraudulent scheme uncovered herein.

20. The true names and capacities, whether individual, corporate, associate or otherwise of Defendants Does 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a fictitiously named Defendant is in some manner responsible for the events and occurrences herein referred to, either contractually or tortiously and caused the damage to the Plaintiff as herein alleged. When Plaintiff ascertains the true names

////

and capacities of DOES 1 through 100, inclusive, they will amend this Complaint accordingly.

## IV.

## FALSE CLAIMS ACT

21. The False Claims Act (hereinafter referred to as "FCA"), 31 USC § 3729, was originally enacted in 1865, and was substantially amended in 1986 by the False Claims Amendments Act, Pub.L. 99-562, 100 Stat. 3153. The FCA was further amended in May 2009 by the Fraud Enforcement and Recovery Act of 2009 ("FERA") and again in March 2010 by the Patient Protection and Affordable Care Act ("PPACA"). Both FERA and PPACA made a number of procedural and substantive changes to the FCA in an attempt to ease the burden on the government and Relators in investigating and prosecuting *qui tam* suits under the FCA.

22. The FCA generally provides that any person who knowingly presents, or causes to be presented, false or fraudulent claims for payment or approval to the United States Government, or knowingly makes, uses, or causes to be made or used false records and statements material to a false claim, or conspires to engage in such conduct, is liable for a civil penalty ranging from **$5,500** up to **$11,000** for each such claim, plus **three times** the amount of the damages sustained by the Federal Government.

23. The FCA allows any person having information about false or fraudulent claims to bring an action for himself or herself and the Government and to share in any recovery. Based on these provisions, Relator seeks, through this action, to recover all available damages, civil penalties, and other relief for the state and federal violations alleged herein.

24. This action is also brought pursuant to the California False Claims Act, Government Code § 12652 which is similar in most regards to the FCA.

////

////

## V.

## FEDERAL HEALTHCARE PROGRAMS

25. In 1965, Congress enacted Title XVIII of the Social Security Act (known as "Medicare" or the "Medicare Program") to pay for the cost of certain medical services and care.

26. Entitlement to Medicare is based on age, disability or affliction with certain diseases. See 42 U.S.C. §§1395 to 1395ccc. Outpatient prescription drugs are covered under Parts A-D of the Medicare Program.

27. In 1965, the Federal Government also enacted the Medicaid program. Medicaid is the nation's medical assistance program for the needy, the medically-needy aged, blind, and disabled and families with dependent children. 42 U.S.C. §§ 1396-1396v. Medicaid is largely administered by the states and funded by a combination of federal and state funds. The State of California contributes significantly to Medicaid funding with the federal government providing the balance of the funding.

28. Medicare is the nation's health program for persons over 65 and the disabled. Medicare is funded by the Federal Government.

29. Under the Medicare Act, 42 U.S.C. § 1395y(a)(1)(A), there is an express fundamental condition of payment: "no payment may be made [under the Medicare statute] for any expenses incurred for items or services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury." This condition links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary." Medicaid and other federally funded programs restrict coverage under the same principle.

30. Medicare and the other federally funded programs require the submission of documented and properly coded claims which include the implied or express representation that the medical treatment, surgery or procedure was medically necessary.

## VI.

## STATE MEDICAL PROGRAMS

31. Medi-Cal is California's Medicaid program. This is a public health insurance program which provides needed healthcare services for low-income individuals including families with children, seniors, persons with disabilities, foster care, pregnant women, and low income people with specific diseases such as tuberculosis, breast cancer, or HIV/AIDS. Medi-Cal is financed equally by the state and federal government.

## VII.

## HOSPICE CARE

32. When a Medicare (or other government healthcare) patient is diagnosed as being terminally ill with a prognosis of less than six (6) months to live, he may elect to obtain hospice care instead of curative care. 42 C.F.R. §418.24. This election, made by the patient after being advised of his rights, focuses on a family centered multidisciplinary approach to the process of death. The care is described as "palliative" which is defined in 42 C.F.R. §418.3(3) as: "Palliative care means patient and family-centered care that optimizes quality of life by anticipating, preventing, and treating suffering. Palliative care throughout the continuum of illness involves addressing physical, intellectual, emotional, social, and spiritual needs and to facilitate patient autonomy, access to information, and choice."

33. All other Medicare benefits are waived during the time of the election and unless it is revoked. 42 C.F.R. §418.24.

34. Federal Rules provide strict guidelines for Hospice providers, patients and care because the Medicare per diem payment is costly to the government: approximately $199 per day per patient enrolled. 42 C.F.R. §418.301 et seq. These conditions of participation include a comprehensive assessment that identifies each otential patient's need for hospice care and services including the need for physical, psychosocial, emotional and spiritual care. 42 C.F.R. §418.52.

35. Hospice rules provide and list the content requirements and time deadlines within which the initial comprehensive assessment must be completed. 42 C.F.R. §418.54. Rules also require updates of the comprehensive assessment by the hospice interdisciplinary group (in collaboration with the patient's attending physician, if any) which must consider changes that have taken place since the initial assessment. This reassessment must be completed at least every 15 days. 42 C.F.R. §418.54(d).

36. The purpose of these and other Hospice laws, rules and regulations are to insure that only qualified patients are accepted by Hospice providers and patients who were initially assessed as eligible, but are later found to be or become ineligible, be converted to more conventional treatment and care providers. 42 C.F.R. §§418.22; 418.25; 418.26(a)(2) and (3).

37. Recertification summaries must be completed by care providers every 60 days to document the need for continued hospice care.

38. Each and every hospice care provider, as a condition of participation in the program, must comply with all federal, state and local laws and regulations related to the health and safety of patients. 42 C.F.R. §418.116.

39. When a patient is no longer terminally ill, or fails to qualify because of philosophical opposition to the nature of hospice care or refuses to accept any of the provided services, Hospice care must be terminated and the patient discharged. 42 C.F.R. §418.26(a).

## VIII.

## CLAIMS FOR RELIEF

### A. <u>COUNT I – False Claims Act: Illegal Claims For Payment</u>

40. Relator repeats and realleges each allegation contained in paragraphs 1 through 39 above as if fully set forth herein.

41. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

42. The Defendants, by and through their officers, agents, employees, related companies, subsidiaries and holding companies knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A) (2010).

43. The Defendants, by and through its officers, agents, and employees authorized and encouraged the actions of its various officers, agents, and employees to take the actions set forth above.

44. As a result of the acts of Defendants, the United States Government reimbursed the Defendants for medically unnecessary hospice care, services, and per diems that it otherwise would not have paid.

45. Every statement, billing and claim for payment submitted to the federal health insurance programs for each and every hospice patient who was not terminally ill with a prognosis of six months or less to live, if the illness runs its usual course or retained in hospice care after recovery, substantial improvement and a new prognosis or who was otherwise disqualified from hospice care represents a false or fraudulent claim for payment.

46. By reason of Defendants' acts the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial. Federal health insurance programs have paid for thousands of days of hospice care and costs that they otherwise would not have paid for but for Defendants' fraudulent and illegal conduct.

47. As set forth in the preceding paragraphs, Defendants have knowingly violated 31 U.S.C. § 3729 et seq. and have thereby damaged the United States Government. The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than $5,500 and not more than $11,000 for each false claim submitted, paid or approved.

48. WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, as follows:

a. That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 et seq. provides;

b. That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the Government Healthcare Programs under the Federal False Claims Act;

c. That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

d. That the Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

e. That the Court award such other and further relief as it deems proper.

**B. COUNT II – False Claims Act: False Records or Statements**

49. Relator repeats and realleges each allegation contained in paragraphs 1 through 48, above as if fully set forth herein.

50. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

51. The Defendants, by and through its officers, agents, employees, related companies, subsidiaries and holding companies knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B) (2010).

52. As set forth in the preceding paragraphs, Defendants' provision of hospice care to unqualified patients defrauded the United States by getting false and/or fraudulent Medicare and other Government healthcare claims paid in violation of 31 U.S.C. § 3729(a)(1)(C) (2010).

////

53. The Defendants, by and through its officers, agents, and employees authorized and encouraged the actions of its various officers, agents, and employees to take the fraudulent actions set forth above.

54. As a result of the acts of Defendants, the United States Government reimbursed Defendants for hospice care that it otherwise would not have paid.

55. Every statement, billing and claim for payment submitted to the federal health insurance programs for each and every patient who received hospice care which failed to meet the admission and retention rules and criteria was medically unnecessary and represents a false or fraudulent statement.

56. By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

57. As set forth in the preceding paragraphs, Defendants have knowingly violated 31 U.S.C. § 3729 et seq. and has thereby damaged the United States Government. The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than $5,500 and not more than $11,000 for each false claim submitted, paid or approved.

58. WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, as follows:

a. That the United States be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 et seq. provides;

b. That civil penalties of $11,000 be imposed for each and every false claim that Defendant(s) caused to be presented to the Government Healthcare Programs under the Federal False Claims Act;

c. That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

d. That the Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

e. That the Court award such other and further relief as it deems proper.

**C. <u>COUNT III – False Claims Act: Conspiracy to Present Illegal Claims For Payment, Present False Records</u>**

59. Relator repeats and realleges each allegation contained in paragraphs 1 through 58 above as if fully set forth herein.

60. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

61. The Defendants, by and through their officers, agents, employees, related companies, subsidiaries and holding companies knowingly conspired to present or cause to be presenting, a false or fraudulent claim for payment or approval and false records or statements material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(A) (2010).

62. The Defendants, by and through its officers, agents, and employees conspired, authorized and encouraged the actions of its various officers, agents, and employees to take the actions set forth above.

63. As a result of the acts of Defendants, the United States Government reimbursed the Defendants for medically unnecessary hospice care, services, and per diems that it otherwise would not have paid.

64. Every statement, billing and claim for payment, record or statement submitted to the federal health insurance programs for each and every hospice patient who was not terminally ill with a prognosis of six months or less to live, if the illness runs its usual course or retained in hospice care after recovery, substantial improvement and a new prognosis or who was otherwise disqualified from hospice care represents a false or fraudulent claim for payment.

////

65. By reason of Defendants' acts the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial. Federal health insurance programs have paid for thousands of days of hospice care and costs that they otherwise would not have paid for but for Defendants' fraudulent and illegal conduct.

66. As set forth in the preceding paragraphs, Defendants have knowingly violated 31 U.S.C. § 3729 et seq. and have thereby damaged the United States Government. The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than $5,500 and not more than $11,000 for each false claim submitted, paid or approved.

67. WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, as follows:

a. That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 et seq. provides;

b. That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the Government Healthcare Programs under the Federal False Claims Act;

c. That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

d. That the Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

e. That the Court award such other and further relief as it deems proper.

////

////

**D. <u>COUNT IV – California False Claims Act – Government Code Section § 12652.</u>**

68. Relator, acting in the name of and on behalf of the State of California, restates and realleges each and every allegation contained in paragraphs 1 through 67 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

69. This is a claim for treble damages and penalties under the California False Claims Act.

70. By virtue of the acts described herein, Defendants, for the purpose of defrauding the California State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medi-Cal and other California State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

71. Each claim for payment for an inadmissible hospice patient, or a patient who no longer qualified for hospice care or whose records were falsified represents a false or fraudulent claim for payment.

72. Each claim for payment for hospice care that contained false, inaccurate or deceptive billing codes or other false statements constitutes a false or fraudulent claim because such false claims are not covered by the California state healthcare programs.

73. The State of California, by and through its Medi-Cal program and other State healthcare programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

74. As a result, California state monies were lost through payments made in respect of the claims and other costs were sustained by the California State Government.

////

75. Therefore, the California State Government has been damaged in an amount to be proven at trial.

76. Additionally, the California State Government is entitled to the maximum penalty of $10,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' conduct as described herein.

77. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to California's Government Code § 12652 on behalf of himself and the State of California.

78. This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medi-Cal program.

79. WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, as follows:

a. That the State of California be awarded damages in the amount permitted by law;

b. That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the California False Claims Act;

c. That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

d. That the Relator be awarded the maximum amount allowed pursuant to the California False Claims Act; and

////

////

////

e. That the Court award such other and further relief as it deems proper.

Dated: June 25, 2021

KNAPP, PETERSEN & CLARKE

By: Mitchell B. Ludwig

Mitchell B. Ludwig
Attorneys for Plaintiff
HARRY LIFSCHUTZ, M.D., an individual

KNAPP, PETERSEN & CLARKE