Kaylee S. Kreitenberg CA SBN 331081
GOTTLIEB TOWNSEND
644 S. Figueroa Street, Ste 200
Los Angeles, CA 90017
T: (212) 566-7766, F: (212) 428-6755
Email: kk@gottliebtownsend.com

Derrelle Janey (*admitted pro hac vice*)
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019
T: (212) 451-2300, F: (212) 451-2222
Email: djaney@olshanlaw.com

*Attorneys for Defendants Kaysan Ghasseminejad; Relyable Hospice Care, Inc.; Toluca Hospice Care, Inc.; Med Plus; Aim Hospice Care, Inc.; VIP Hospice Care, Inc.; Millennium Hospice Care, Inc.*

U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA AND STATE OF CALIFORNIA EX REL. HARRY LIFSCHUTZ, M.D., an individual,<br><br>Plaintiff,<br><br>v.<br><br>KAYSAM GHASSEMINJEAD, an individual; KENNETH CARVER, an individual; SANDRA MAGADA, an individual; DARHIAZEL RAMIREZ, an individual; MED PLUS, a California corporation; HOSPICE CARE, INC., a California corporation; AIM HOSPICE CARE, INC., a California corporation; MERIT HOSPICE CARE INC., a California corporation; MILLENNIUM HOSPICE CARE, INC., a California corporation; BLUE HEAVEN HOSPICE & PALLIATIVE CARE, INC., a California corporation; VIP HOSPICE CARE, INC., a California corporation; RELYABLE HOSPICE CARE, INC., a California corporation; TOLUCA HOSPICE CARE, | NO. 2:21-cv-05328-JFW-MAR<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Memorandum of Points and Authorities, the Declaration of Derrelle Janey, and Proposed Order*]<br><br>Judge: Hon. Michelle Williams<br>Courtroom: 6A<br><br>Motion Date: September 11, 2026 |

| | |
|---|---|
| INC., a California corporation; GATES TO PARADISE HOSPICE CARE, INC., a California corporation; THOUSAND OAKS HOSPICE CARE, INC., a California corporation; MOUNT OLIVES HOSPICE, INC., a California corporation; HEALTHY LIFE HOSPICE, INC., a California corporation; BAGRAT LOBZHANIDZE aka BAGRAT LONZHANIDZE, an individual; and DOES 1-100, inclusive,<br><br>Defendants. | Time: 1:30 PM |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT ON September 11, 2026, at 1:30 PM, or as soon thereafter as this matter is called, in Courtroom 6A of the above-entitled Court, located at 350 W. First Street, Los Angeles, California 90012, defendants Kaysan Ghasseminejad[1], Relyable Hospice Care, Inc., Med Plus, and VIP Hospice Care, Inc. (collectively, the "Moving Defendants")[2] will and hereby do move this Court to DISMISS THE SECOND AMENDED COMPLAINT (Dkt. No. 190, the "SAC"). This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on July 28, 2026. The parties were unable to reach a resolution of the claims against the Moving Defendants, thereby necessitating this Motion to Dismiss.

This Motion is made upon the grounds that: (1) the SAC fails to **identify** any **actual false claim** submitted to the government by any Defendant represented by the undersigned; (2) the SAC impermissibly lumps Defendants together in violation of Rule 9(b); (3) the SAC fails to satisfy the "who, what, when, where, and how" requirements of Rule 9(b); (4) the SAC's scienter allegations are conclusory and

---

[1] The Complaint incorrectly spells Defendant Kaysan Ghasseminejad's name as "Kaysam Ghasseminjead."

[2] The undersigned counsel also represents entity defendants Toluca Hospice Care, Inc., Aim Hospice Care, Inc., and Millennium Hospice Care, Inc. Although the Motion to Dismiss posits arguments that likewise apply to these defendants, these entities are currently suspended by the Franchise Tax Board and, for this reason, they are prohibited by law from defending themselves in this action. *See* Revenue and Taxation Code § 23301; *Anyang Xinyi Elec. Glass Co. v. B & F Int'l (USA) Inc.,* No. CV1500862BROAJWX, 2016 WL 7435482, at *4 (C.D. Cal. Aug. 4, 2016) (*citing Grell v. Laci Le Beau Corp.*, 73 Cal. App. 4th 1300, 1306 (Cal. Ct. App. 1999)). As such, counsel is unable to move on their behalf.

legally insufficient; (5) the conspiracy allegations are devoid of factual content necessary to state a claim; and (6) the California False Claims Act claims fail for the same reasons as their federal counterparts. The SAC fails to satisfy both the baseline plausibility requirements of Federal Rule of Civil Procedure 8(a) and the heightened particularity requirements of Rule 9(b) that govern fraud-based claims under the False Claims Act. Dismissal with prejudice is required.

This application is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Derrelle Janey, all pleadings and papers filed in this action, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Dated: New York, New York
July 29, 2026

OLSHAN FROME WOLOSKY LLP

By: */s/ Derrelle Janey*

Derrelle Janey (*admitted pro hac vice*)
1325 Avenue of the Americas
New York, New York 10019
Tel: (212) 451-2300
Fax: (212) 451-2222
Email: djaney@olshanlaw.com

Dated: New York, New York
July 29, 2026

GOTTLIEB TOWNSEND

By: */s/ Kaylee S. Kreitenberg*

Kaylee S. Kreitenberg, CA SBN 331081
644 S. Figueroa Street, Ste 200
Los Angeles, CA 90017
T: (212) 566-7766, F: (212) 428-6755

Email: kk@gottliebtownsend.com

*Attorneys for Defendants Kaysan Ghasseminejad; Relyable Hospice Care, Inc.; Toluca Hospice Care, Inc.; Med Plus; Aim Hospice Care, Inc.; VIP Hospice Care, Inc.; Millennium Hospice Care, Inc.*

# Table of Contents

Page

I. INTRODUCTION ........ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........ 2

A. Relator's Two Prior Complaints Failed to Satisfy the Pleading Standards ........ 2

B. The Court's Dismissal Order Identified a Litany of Fatal Deficiencies in the FAC ........ 3

C. The SAC's New Allegations Do Not Cure the Defects the Court Identified ........ 4

III. LEGAL STANDARD ........ 8

IV. ARGUMENT ........ 10

A. The SAC Fails to Plead False Claims With Particularity or Reliable Indicia of Submission ........ 10

B. The Court Should Disregard Exhibit B and Relator's Arguments Based on It ........ 12

C. The SAC Still Fails to Plead Particularized Fraud Against Each Defendant ........ 13

D. The SAC Still Fails to Plead Scienter ........ 14

E. The SAC Still Fails to Plead a False Records Claim ........ 16

F. The SAC Still Fails to Plead an FCA Conspiracy ........ 16

G. The California False Claims Act Claim Fails for the Same Reasons ........ 17

H. The SAC Should Be Dismissed With Prejudice ........ 17

V. CONCLUSION ........ 19

# Table of Authorities

Page

CASES

*Anyang Xinyi Elec. Glass Co. v. B & F Int'l (USA) Inc.*, No. CV1500862BROAJWX, 2016 WL 7435482 (C.D. Cal. Aug. 4, 2016) .......... 1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 8, 15, 17

*Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*, No. SACV 21-00831-CJC, 2021 WL 6104014 (C.D. Cal. Aug. 13, 2021) .......... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 8

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) .......... 9, 19

*Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) .......... 18

*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) .......... 9, 10, 11

*Elec. Waveform Lab, Inc. v. EK Health Servs.*, No. CV158061DMGRAOX, 2016 WL 1622505 (C.D. Cal. Mar. 1, 2016) .......... 2, 8

*Gauvin v. Trombatore*, 682 F. Supp. 1067 (N.D. Cal. 1988) .......... 9

*Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201 (9th Cir. 2019) .......... 10

*Grell v. Laci Le Beau Corp.*, 73 Cal. App. 4th 1300 (Cal. Ct. App. 1999) .......... 1

*Harris v. Cnty. of Orange*, 682 F.3d 1126 (9th Cir. 2012) .......... 2, 8

*Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124 (9th Cir. 2008) .......... 9

Table of Authorities
(continued)

Page

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .......... 10, 11

*Nevijel v. N. Coast Life Ins. Co.*,
651 F.2d 671 (9th Cir. 1981) .......... 9

*Oceanside Organics v. County of San Diego*,
341 F. Supp. 3d 1129 (S.D. Cal. 2018) .......... 18

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) .......... 9, 16

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) .......... 18

*U.S. ex rel. Hopper v. Anton*,
91 F.3d 1261 (9th Cir. 1996) .......... 9, 10, 13

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) .......... 9

*United States ex rel. Hendow v. Univ. of Phoenix*,
461 F.3d 1166 (9th Cir. 2006) .......... 9, 13

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) .......... 10

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 9, 16

*Welgus v. TriNet Group, Inc.*,
No. 15-cv-03625-BLF, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) .......... 18

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .......... 18

Statutes

California False Claims Act, Cal. Govt. Code §§ 12650 et seq. .......... passim

False Claims Act, 31 U.S.C. § 3729, et seq. .......... passim

Table of Authorities
(continued)

Page

Revenue and Taxation Code § 23301 ........................................................ 1

OTHER AUTHORITIES

Fed. R. Civ. P. 8 ........................................................ passim

Fed. R. Civ. P. 9 ........................................................ passim

Fed. R. Civ. P. 12 ........................................................ 3, 8, 9, 20

Fed. R. Evid. 201(b)(2) ........................................................ 2, 8

Local Rule 7-3 ........................................................ 8

Medical Board of California website (https://www.mbc.ca.gov/License-Verification/default.aspx) ........................................................ 2

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Kaysan Ghasseminejad[3], Relyable Hospice Care, Inc., Med Plus, and VIP Hospice Care, Inc. (collectively, the "Moving Defendants") [4] respectfully submit this memorandum of points and authorities in support of their Motion to Dismiss the Second Amended Complaint (the "SAC").

**I. INTRODUCTION**

The SAC is Relator's third pleading attempt. And, like the other two before it, the SAC remains woefully deficient and warrants dismissal; this time, with prejudice.

The Court's recent Memorandum and Decision (Dkt. No. 189) dismissing the FAC was incisive and direct as to the applicable law and the deficiencies; it identified precise defects Relator had to cure for a complaint to satisfy the stringent pleading standards. In particular, the Court held that the FAC: (1) described a supposed hospice-fraud scheme generally but lacked reliable indicia that false claims were actually submitted; (2) listed supposed billing amounts for only patients M.A. and S.M. without explaining how Relator learned those figures; (3) blurred Medicare and Medi-Cal together without differentiating between the alleged recipients of false claims; (4) improperly relied on information-and-belief allegations without pleading the factual basis for those beliefs; (5) alleged Mr. Ghasseminejad's involvement and scienter through officer titles and conclusory control allegations rather than particular actions; (6) sought to impute one defendant's conduct to others without particularized facts supporting imputation; (7) failed to allege facts specific to defendant VIP; (8) continued impermissible group pleading under Rules 8 and 9(b); (9) failed to plead a false statement or fraudulent course of conduct with particularity; and, as a result, (10)

---

[3] The Complaint incorrectly spells Defendant Kaysan Ghasseminejad's name as "Kaysam Ghasseminjead."

[4] The undersigned counsel also represents entity defendants Toluca Hospice Care, Inc., Aim Hospice Care, Inc., and Millennium Hospice Care, Inc. Although the Motion to Dismiss posits arguments that likewise apply to these defendants, these entities are currently suspended by the Franchise Tax Board and, for this reason, they are prohibited by law from defending themselves in this action. *See* Revenue and Taxation Code § 23301; *Anyang Xinyi Elec. Glass Co. v. B & F Int'l (USA) Inc.,* No. CV1500862BROAJWX, 2016 WL 7435482, at *4 (C.D. Cal. Aug. 4, 2016) (*citing Grell v. Laci Le Beau Corp.*, 73 Cal. App. 4th 1300, 1306 (Cal. Ct. App. 1999)). As such, counsel is unable to move on their behalf.

failed to state a False Claims Act violation, conspiracy, or California False Claims Act claims.

Nevertheless, Relator returns here with a complaint containing the same fatal defects. The SAC is simply confirmation that Relator **cannot** plead what the Court already told him he must plead. This third failure should be the last. The SAC should be **dismissed with prejudice**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Relator's Two Prior Complaints Failed to Satisfy the Pleading Standards

This action was initiated as a qui tam complaint filed under seal on June 30, 2021, in the United States District Court for the Central District of California, Case No. 2:21-cv-05328 (Dkt. No. 1). The Relator, Harry Lifschutz, M.D., who alleges to be a physician licensed in the State of California,[5] brought this action on behalf of the United States of America and the State of California pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq., and the California False Claims Act ("CFCA"), Cal. Govt. Code §§ 12650 et seq. The United States and the State of California declined to intervene. (Dkt. No. 54).

The case remained under seal for nearly four years. On May 19, 2025, the United States and the State of California filed a Notice of Election to Decline Intervention.

---

[5] Critically, the relevant time period for the harm proffered by Relator falls largely within the period during which the Relator's medical license was subject to active disciplinary probation imposed by the Medical Board of California for misconduct rising to the level of gross negligence, repeated negligent acts, incompetence, and failure to maintain adequate and accurate medical records—including, most recently, findings that he improperly prescribed and inadequately monitored high-dose opioids for three patients and violated multiple terms of his previous probation. *See Declaration of Derrelle Janey in Support of Defendants' Motion to Dismiss the Second Amended Complaint* (filed concurrently herewith), Exs. A-B. The relevant Decisions and Orders are publicly available on the Medical Board of California website (https://www.mbc.ca.gov/License-Verification/default.aspx). The Board's July 30, 2019 Decision and Order revoked Dr. Lifschutz's medical license, stayed that revocation, and placed him on probation for four years effective August 29, 2019, following a stipulated settlement. *Id.* at Ex. A. Subsequently, by Decision dated June 28, 2024, the Board found additional causes for discipline—including gross negligence, repeated negligent acts, failure to maintain adequate records, and general unprofessional conduct—as well as probation violations, and extended Dr. Lifschutz's probation for an additional three years (until 2027) under the same terms and conditions. *Id.* at Ex. B. The Court may properly consider these circumstances on a motion to dismiss because they are a matter of public record, and judicial notice of these filings is appropriate under Fed. R. Evid. 201(b)(2). *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (courts may take judicial notice of "undisputed matters of public record."); *Elec. Waveform Lab, Inc. v. EK Health Servs.*, No. CV158061DMGRAOX, 2016 WL 1622505, at *2 (C.D. Cal. Mar. 1, 2016) (same).

(Dkt. No. 54). On June 23, 2025, the Court entered an Order unsealing the case. (Dkt. No. 56).

On March 30, 2026, the undersigned, on behalf of the Moving Defendants, filed a motion to dismiss the original Complaint under Rules 8(a), 9(b), and 12(b)(6). (Dkt. No. 165). That motion, *inter alia*, argued that the original Complaint impermissibly lumped Moving Defendants together with numerous other corporate entities, individual defendants, and Doe defendants; attributed conduct collectively without identifying what each Moving Defendant allegedly did, when each did it, or how each was involved in any fraud; and therefore failed both Rule 8(a)'s plausibility requirement and Rule 9(b)'s heightened particularity requirement for FCA claims. (*Id.*). Relator did not oppose that motion on the merits; instead, he filed the First Amended Complaint. (Dkt. No. 173).

Defendants, in turn, moved to dismiss the FAC, arguing that it failed to allege any false claim against VIP Hospice Care, Inc., failed to identify any actual false claim submitted by any Moving Defendant, impermissibly lumped defendants together, failed to plead the "who, what, when, where, and how" of fraud, failed to plead scienter, failed to plead conspiracy, and failed to state a California False Claims Act claim. (Dkt. No. 182). On June 24, 2026, the Court granted Defendants' motion and dismissed all claims in the FAC with leave to amend. (Dkt. No. 189).

### B. The Court's Dismissal Order Identified a Litany of Fatal Deficiencies in the FAC

The Court dismissed the FAC because it failed to allege a false claim with particularity. (*Id.* at 8). The Court, pursuant to the Federal Rule of Civil Procedure (the "FRCP") Rule 9(b), made findings that also inform and guide the instant motion: although the FAC described a scheme generally, it did not include sufficient indicia of reliability to plead an FCA claim; it listed alleged billing amounts for only M.A. and S.M. without explaining how Relator learned those figures; it referred in one place to Medicare reimbursements and elsewhere to Medi-Cal claims without differentiating

between the alleged payors; and it offered no factual basis—beyond information and belief—for the allegation that Defendants received payment. (*Id.*). The Court further held that information-and-belief fraud allegations ordinarily do not satisfy Rule 9(b), and, even where the information is allegedly in Defendants' possession, Relator still must plead the factual basis for his belief. (*Id.*).

The Court separately held that the FAC lacked particularized allegations regarding Mr. Ghasseminejad's actions in submitting false claims. (*Id.* at 8-9). The Court rejected conclusory allegations of direction, operation, or control, and held that officer titles were insufficient to allege particular actions. (*Id.*). The Court also held that shared addresses did not support imputation of one defendant's actions to another, and that tax liens did not indicate the submission of false claims. (*Id.*).

The Court also rejected Relator's group-pleading approach. (*Id.* at 9). The Court held that the FAC's allegations as to the larger scheme were deficient and that group pleading is impermissible under both Rule 8 and Rule 9(b). (*Id.*).

And, the Court also remarked that Relator's own authorities underscored the FAC's inadequacy because *Ebeid* rejected similarly thin allegations by an outsider, while *Godecke* and other cases finding reliable indicia involved specific facts showing how the relator learned of the billing scheme, representative examples, or direct evidence tying the defendant to claims. (*Id.* at 9-10).

Finally, because the FAC failed to plead a substantive FCA violation, the Court dismissed the FCA conspiracy claim. (*Id.* at 10-11). Similarly, as the California False Claims Act claim rested on the same factual deficiencies, the Court dismissed that claim as well for failure to meet the heightened pleading standard. (*Id.* at 11).

### C. The SAC's New Allegations Do Not Cure the Defects the Court Identified

Relator filed the SAC on July 15, 2026. (Dkt. No. 190). The SAC fails to satisfy the Court's list of specific fatal defects that warranted dismissal of the FAC. The SAC repeats the same theory: Defendants allegedly recruited elderly patients into hospice

through paid recruiters, allegedly procured fraudulent medical certifications, allegedly enrolled patients in hospice, and allegedly caused Medicare and Medi-Cal to pay for hospice services that were not medically necessary or not provided. (*Id.* at ¶¶ 33-36). The SAC asserts the same four causes of action as before: (1) False Claims Act—Illegal Claims for Payment, 31 U.S.C. § 3729(a)(1)(A) (Count I); (2) False Claims Act—False Records or Statements, 31 U.S.C. § 3729(a)(1)(B) (Count II); (3) False Claims Act—Conspiracy, 31 U.S.C. § 3729(a)(1)(C) (Count III); and (4) California False Claims Act, Cal. Govt. Code § 12652 (Count IV). (*Id.* at ¶¶ 61–97).

The SAC, like the original Complaint and the FAC, alleges that the "Defendants"—a term that sweeps in the Moving Defendants together with more than ten other corporate entities and individuals—knowingly submitted false claims to Medicare, Medi-Cal, and other government healthcare programs by admitting and retaining patients who were not terminally ill and did not meet federal or state eligibility criteria for hospice benefits. (*Id.* ¶¶ 32-36).

In an effort to establish knowledge on the part of Mr. Ghasseminejad, like before, the SAC includes a recitation from the California Secretary of State corporate filings stating in boilerplate language the officer positions Mr. Ghasseminejad previously held in several hospice entities (*Id.* ¶¶ 51-52). Without one shred of support, Relator alleges in conclusory fashion that "[a]s the sole owner, chief executive officer, managing member, and/or principal officer of those entities, he exercised authority over Medicare enrollment, maintenance of billing privileges, patient admissions, billing operations, corporate finances, and the accounts into which government reimbursements were deposited. Because the submission of Medicare hospice claims necessarily required provider enrollment, maintenance of billing privileges, supervision of billing personnel, and control over the entities' financial operations, those functions were within Ghasseminejad's exclusive authority." (*Id.* ¶ 58).

In addition to the conclusory allegations that existed in the FAC with respect to Mr. Ghasseminejad and are repeated here, Relator now adds bankruptcy-related

allegations concerning an entirely unrelated real property owning entity K3B Enterprises, LLC. (*Id.* ¶¶ 55-57). Oddly, Relator tries to use that information to buttress his conclusion that Mr. Ghasseminejad "knowingly executed, authorized, directed, approved, or caused the submission of the Medicare and Medi-Cal hospice Medical Certifications and reimbursement claims described in this Complaint." (*Id.* ¶ 59).

The SAC itself exposes Relator's continued uncertainty as to the basic payor issue the Court already identified: Relator alleges that his investigation included "reviewing the patient's EOBs which reflected that the denial was based on the patient being enrolled with hospice and that **Medicare or Medi-Cal** was paying for hospice care." (*Id.* ¶ 44). The phrase "Medicare or Medi-Cal" is probative; it is an admission that Relator still does not know which program allegedly paid which claim. The rest of the SAC confirms that as there is no differentiation between which hospice entities allegedly fraudulently billed Medicare or Medi-Cal.

Relator also adds an Exhibit A chart that lists alleged patient initials, hospice entities, NPI numbers, enrollment periods, and a column labeled "Patient's Medical Condition." (Dkt. No. 190 at Ex. A). There is no information regarding the source of the chart or any explanation that factually indicates its reliability. Troublingly, the column entitled "Patient's Medical Condition" is not actually a medical record at all, or a complete list of each patient's ailments, or the set of medical conditions on which any hospice enrollment was based. Rather, it is simply Relator's own shorthand description of the condition for which he says he allegedly saw the patient. This information fails to pass the reliability test. Further, Exhibit A does not identify any claim numbers, billing codes, claim submission dates, payment dates, certifications of terminal illness, or facts showing why any hospice certification was false when made. (*Id.*).

Relator also adds in Exhibit B a partial Explanation of Benefit notice for one patient, M.A. (*Id.* at Ex. B). Although the first page header states that the document contains a total of six pages, the exhibit conveniently only attaches two pages. (*Id.*).

Relator alleges that this Exhibit B reflects denials for several of his own submitted claims to Medicare for services provided to M.A. on the basis that "this service is not covered because the service was provided by a non-attending physician." (*Id.* ¶ 41). But, neither Relator's alleged claims for payment, nor any alleged denial appears anywhere on the EOB. This is confirmed by the complete lack of citation to Exhibit B in those related allegations.

As before, each Count detailing his claim for relief remains entirely boilerplate, discussing the alleged wrongful conduct of "Defendants" in the general term that refers to more than ten named individuals and entity defendants without any attempt to differentiate between them, and including a conclusory recitation of the factors needed to establish the claims. (*Id.* ¶¶ 60-95).

As it regards Defendant VIP Hospice Care, Inc., for which the FAC failed to include any allegations associating the entity with any specific patients whatsoever or any allegations of wrongdoing, the SAC now includes only two references to Defendant VIP Hospice Care, Inc. in Exhibit A by listing the entity name next to two patient initials. (*Id.* at Ex. A). As before, there are no allegations that any of this Defendant's claims (to the extent there were any) were false or that any of its conduct was wrongful.

While Relator tries to pass these new sections off as sufficient to meet the heightened pleading standard, upon closer review these statements are all baseless conclusory statements and continue the same deficiencies the Court already found fatal. First, Relator states in conclusory fashion that each patient was not terminal. (*Id.* at ¶ 96). Yet, there are absolutely ***no*** supporting allegations to substantiate this conclusion. Indeed, there are ***absolutely no*** allegations that Relator had access to or reviewed the patient's full medical file, that the Relator had any experience determining whether a patient was terminal or not, or any basis whatsoever for him to conclude that the patient was not terminal. Second, there are no allegations, aside from conclusory ones, that the Moving Defendants submitted any alleged false claims or

that they were paid for any alleged false claims. Indeed, the SAC stripped out all of the supposed amounts that each entity was paid by Medicare or Medi-Cal that the FAC claimed – a clear admission of its falsity. Relator does not provide such a basis now because he cannot. On January 29, 2026, Relator filed a *Motion to Modify Scheduling Order to Continue Default Judgment Deadline* in which Relator stated to the Court that he did not have any claims data. (Dkt. No. 148 at 2). In the absence of claims data, the Relator cannot now, here with the SAC, make a non-conclusory assertion about what, if anything, might have been billed for those services. The Court may properly consider Relator's prior representation to the Court about lack of claims data for the purposes of this motion because (i) the filings are a matter of public record and part of the record in this action, and (ii) judicial notice of court filings is appropriate under Fed. R. Evid. 201(b)(2). *See Harris*, 682 F.3d at 1132 (courts may take judicial notice of "undisputed matters of public record…including documents on file in federal or state courts."); *Elec. Waveform Lab, Inc.*, 2016 WL 1622505, at *2 (same). Having opened the door by falsely alleging what Defendants purportedly billed for each patient, Relator cannot now avoid scrutiny of his own prior admission that he possesses no claims data from which such figures could be derived.

On April 28, 2026, the counsel for the parties met and conferred pursuant to Local Rule 7-3, regarding this Motion to Dismiss the SAC. The parties were unable to reach a resolution of the claims against Defendants, thereby necessitating this Motion to Dismiss.

**III. LEGAL STANDARD**

Rules 8 and 12(b)(6) require more than accusation by volume. A complaint must contain sufficient factual matter to state a claim that is plausible on its face, and threadbare recitals of the elements supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 also requires a complaint to identify the claims and parties clearly enough that a defendant can respond; pleadings that are verbose, confusing,

conclusory, or that lump all defendants together are subject to dismissal. *See Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008) (Rule 8 requires a complaint to clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss."); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981) (pleadings that are "verbose, confusing and conclusory" are subject to dismissal); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (A plaintiff fails to comply with Rule 8 if "all defendants are lumped together in a single, broad allegation.").

FCA claims sound in fraud and must satisfy Rule 9(b). *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011); *Bly-Magee v. California*, 236 F.3d 1014, 1018–19 (9th Cir. 2001). Rule 9(b) requires the "who, what, when, where, and how" of the alleged misconduct, including the time, place, and specific content of the false representations and what is false or misleading about them. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The point is practical: the defendant must be able to answer the fraud allegations, not merely deny wrongdoing in the abstract.

To state a FCA claim, a relator must allege "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). "It is not the case that any breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the [False Claims Act]." *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265 (9th Cir. 1996).

A relator need not identify a representative false claim for every allegation, but must plead particular details of a scheme to submit false claims paired with reliable

indicia leading to a strong inference that claims were actually submitted. *Ebeid*, 616 F.3d at 998–99; *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1209 (9th Cir. 2019). Generalized allegations of a scheme are insufficient if they do not link the moving defendants to the scheme, and allegations made on information and belief ordinarily do not satisfy Rule 9(b) unless the relator pleads the factual basis for the belief. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *Ebeid*, 616 F.3d at 999.

## IV. ARGUMENT

### A. The SAC Fails to Plead False Claims With Particularity or Reliable Indicia of Submission

The Court dismissed the FAC because it did not plead false claims with particularity or provide reliable indicia that claims were actually submitted. The SAC still fails for the same reason.

Relator's Exhibit A lists patient initials, provider NPIs, enrollment date ranges, and short descriptions of conditions Relator says he treated. (Dkt. No. 190 at Ex. A). But those entries are not the patients' full medical histories or the medical bases for hospice enrollment, and they do not identify actual claims, claim forms, claim numbers, billing codes, submission dates, payment dates, payors, or amounts paid.

That omission matters. The FCA does not impose liability for generalized suspicion, questionable corporate structure, or the mere fact of a patient's hospice enrollment. *Hopper*, 91 F.3d at 1265. It imposes liability for false or fraudulent claims and false records material to such claims. 31 U.S.C. § 3729(a)(1)(A), (B).

The SAC continues to equate enrollment periods with false claims. (Dkt. No. 190 at Ex. A). The Court already rejected that level of pleading because the FAC described a scheme generally but did not provide sufficient indicia of reliability under Rule 9(b). (Dkt. No. 189 at 8). The Court also emphasized that claims must be tied to specific agencies and that generalized allegations are insufficient where the pleading blurs Medicare, Medi-Cal, and other programs together. (*Id.* at 8-9). Relator's new list

is still not a claim. It is a spreadsheet-style allegation that asks the Court to infer that every enrollment necessarily generated false claims, that every claim was paid, and that each claim was false.

Relator's own pleading also admits he still lacks the data necessary to plead the scheme he alleges. The SAC alleges that, "[w]ithout resort to discovery or a Court Order," Relator "currently cannot state which patients had their claims paid entirely through Medicare, Medicaid, or some combination of both" because claims and billing information are allegedly protected and within Defendants' or the government's control. (Dkt. No. 190 ¶ 50). Elsewhere, Relator says his investigation consisted of reviewing EOBs showing that "Medicare or Medi-Cal was paying for hospice care." (*Id.* at ¶ 44(a)). That equivocation is fatal. "Medicare or Medi-Cal" confirms that Relator still does not know which government program allegedly paid which claim, for which patient, to which entity, or on what date. The Court already held that this precise failure to differentiate Medicare from Medi-Cal was insufficient. (Dkt. No. 189 at 8). Relator has not cured it; he has repeated it.

Rule 9(b) does not permit Relator to plead first and search for claims later. The Court relied on *Neubronner* and *Ebeid* in holding that information-and-belief allegations do not suffice unless the relator pleads the factual basis for the belief, and that the FCA does not jettison Rule 9(b) merely because billing information may be in a defendant's possession. (Dkt. No. 189 at 12 ("Pleading fraud based on information and belief normally does not satisfy Rule 9(b). *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Even in contexts where the information is exclusively within the defendant's possession, a party still must provide the factual basis for its belief. *See id.* (citations omitted); *see also Ebeid*, 616 F.3d at 999 (declining to apply in the False Claims Act context a relaxed pleading standard for information solely within the defendant's possession, noting that '[t]o jettison the particularity requirement simply because it would facilitate a claim by an outsider is hardly grounds for overriding the general rule, especially because the FCA is geared primarily to encourage insiders to

disclose information necessary to prevent fraud on the government.")). Relator's SAC asks the Court to disregard the very rule the Court just applied.

### B. The Court Should Disregard Exhibit B and Relator's Arguments Based on It

Relator's only claim-related exhibit concerns one patient: M.A. The SAC alleges that M.A.'s EOB, attached as Exhibit B, reflects a Med Plus hospice claim for September 1 through September 21, 2020, a claim number, a reference to Dr. Lavian, and a Medicare payment. (Dkt. No. 190 at Ex. B). Even accepting that limited entry at face value, it does not plead a false claim.

The Court should disregard Exhibit B and the arguments Relator builds on it. Exhibit B is facially incomplete: the first page identifies the notice as "page 1 of 6," but Relator attaches only two pages. (*Id.*). Relator also claims that the exhibit reflects denials of several of his own Medicare claims for services provided to M.A. on the ground that "this service is not covered because the service was provided by a non-attending physician." (Dkt. No. 190 ¶ 41). But the attached pages do not contain Relator's alleged submitted claims for payment, do not show denials of those claims, and do not state the alleged reason for any denial. (*Id.* at Ex. B). The absence of those materials confirms that Exhibit B is partial and that Relator's argument depends on missing pages or unsupported inference—not pleaded fact.

That is not permitted on a motion to dismiss. While courts may consider exhibits attached to a complaint, they need not accept allegations contradicted by those exhibits, conclusory characterizations of those exhibits, or unreasonable inferences drawn from them. *Sprewell*, 266 F.3d at 988; *Daniels-Hall*, 629 F.3d at 998. Relator cannot use a partial EOB to smuggle in allegations that the exhibit does not contain.

Even if the Court considers the attached pages, Exhibit B still fails. It does not plead that any false certification was made, who made it, when it was made, what it said, why it was false when made, or how any Moving Defendant knew it was false. Relator alleges, on information and belief, that Dr. Lavian never saw, interviewed, or

evaluated M.A., but the SAC identifies no witness, document, communication, medical record, or declaration supporting that assertion. (Dkt. No. 190 ¶ 47).

Finally, Exhibit B does not plead falsity. The fact that Medicare paid a hospice claim is not itself an FCA violation; the Ninth Circuit has made clear that not every regulatory violation, breach, or receipt of government funds gives rise to FCA liability. *Hopper*, 91 F.3d at 1265. Relator still must plead why the claim was false, why the patient was ineligible under hospice rules, what facts the certifying provider or submitting entity allegedly misrepresented, why those facts were material to payment, and how the Moving Defendants knew that any representation was false. *Hendow*, 461 F.3d at 1174. The SAC does not do so.

### C. The SAC Still Fails to Plead Particularized Fraud Against Each Defendant

The SAC continues to group defendants together in precisely the manner the Court already rejected. Count I alleges that "Defendants, by and through their officers, agents, employees, related companies, subsidiaries and holding companies" knowingly presented false claims. (Dkt. No. 190 ¶ 63). Count II repeats the same collective formulation for false records or statements. (*Id.* ¶ 71). Count III repeats it again for conspiracy. (*Id.* ¶ 80). Count IV pleads the California False Claims Act claim in the same collective way. (*Id.* ¶ 88).

The SAC names numerous individual defendants, numerous entity defendants, and 100 Doe defendants. The SAC repeatedly alleges that "all of the Defendants" followed the same pattern and practice, but then fails to say what each Moving Defendant allegedly did, when each did it, where each did it, and how each caused a false claim.

Rule 9(b) does not permit Plaintiff's approach. *Corinthian Colleges* holds that Rule 9(b) requires a plaintiff suing multiple defendants to differentiate allegations and identify each defendant's role in the alleged fraudulent scheme. 655 F.3d at 997–98. The Court already applied that principle here when it held that group pleading

remained impermissible under Rules 8 and 9(b). (Dkt. No. 189 at 9 ("Not only do the FAC's allegations as to the larger scheme fall short, but group pleading remains impermissible under both Rule 8 and Rule 9(b).")). The Court also cited *Balboa Capital* for the related rule that where a plaintiff seeks to impute fraud liability from one party to another, the facts supporting imputation must themselves be pleaded with particularity. (Dkt. No. 189 at 9 (*quoting Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*, No. SACV 21-00831-CJC (JDEx), 2021 WL 6104014, at *2 (C.D. Cal. Aug. 13, 2021) ("Where, as here, the claimant seeks to impute liability for fraud from one party to another, the facts supporting the theory for imputation must be pled with particularity under Rule 9(b)." (citation omitted)).

The SAC's factual allegations do not cure the Counts. The factual background identifies certain patient initials associated with certain hospice entities, although none actually allege a false claim (aside from in conclusory fashion), but the Counts still define liability collectively and indiscriminately. Defendants are still left to guess whether each Count is directed to a specific claim, a specific patient, a specific entity, a specific certifying physician, a specific recruiter, or a generalized alleged scheme. That is exactly what Rules 8 and 9(b) forbid, and this Court expressly told Relator was fatal to his claims.

The problem is especially acute as to VIP. The FAC was dismissed in part because it offered no allegations specific to VIP. The SAC now adds two patients allegedly associated with VIP in Relator's concocted chart in Exhibit A, H.L. and A.M., but it still pleads no claim number, billing code, payment amount, payment date, false certification, or any factual basis showing that VIP submitted any false claim for either patient. Adding a Defendant's name next to two initials to an exhibit is not particularized fraud pleading.

### D. The SAC Still Fails to Plead Scienter

The Court previously held that the FAC lacked details of Mr. Ghasseminejad's actions in submitting false claims beyond officer titles, and that conclusory allegations

of direction, operation, or control were insufficient. (Dkt. No. 189 at 8-9). Yet, the SAC again relies on officer titles, corporate-control allegations, shared addresses, and conclusions about knowledge. (Dkt. No. 190 ¶¶ 51-52).

Relator's new bankruptcy allegations do not change the analysis. (*Id.* ¶¶ 55-59). The SAC alleges that Mr. Ghasseminejad owned an entirely unrelated entity, K3B Enterprises, LLC, that K3B's principal place of business was the same address associated with some hospice entities, that K3B's sole asset was a Beverly Hills residence, and that Mr. Ghasseminejad allegedly testified that hospice companies generated approximately $1 million per month and that he used those funds to service debt on the residence. (*Id.* at ¶¶ 55-56). The SAC further alleges that several hospice companies signed loan documents and that Mr. Ghasseminejad signed on behalf of those companies. (*Id.* at ¶ 57).

Those allegations are a red herring. They may concern ownership, finances, or corporate structure, but they are not allegations of FCA scienter. They do not show that Mr. Ghasseminejad knew any identified patient was not terminal. They do not show that he saw, approved, directed, or caused any allegedly false certification. They do not identify any communication between him and a recruiter, physician, biller, employee, or patient. They do not identify any claim he submitted or caused to be submitted. They also do not show that any claim was false or fraudulent.

The SAC's scienter allegations therefore remain conclusory. Relator alleges that Mr. Ghasseminejad "knowingly executed, authorized, directed, approved, or caused" submissions, and that any other persons involved acted under his direction or authority. (Dkt. No. 190 ¶ 59). Those allegations merely recite control and causation; they do not plead facts. *Iqbal*, 556 U.S. at 678. That is exactly what the Court already rejected when it held that allegations of direction, operation, control, and officer titles "fall short of alleging particular actions." (Dkt. No. 189 at 8-9).

The SAC's allegation that patients were "manifestly not terminal" is also insufficient to plead Defendants' subjective knowledge. (Dkt. No. 190 ¶ 96(c)).

Relator's short diagnostic labels in Exhibit A—arthritis, headaches, vascular disease, back pain, varicose veins, and the like—identify only the condition **Relator** claims to have treated; they do not establish hospice ineligibility under Rule 9(b), do not identify the patient's complete medical condition or the medical basis for hospice enrollment, and do not establish what any Moving Defendant subjectively knew when a claim was submitted or that it was false.

### E. The SAC Still Fails to Plead a False Records Claim

Count II fares no better. The SAC alleges that Defendants knowingly made, used, or caused to be made or used false records or statements material to false claims, but it does not identify the false records or statements with particularity.

If the alleged false records are hospice certifications, the SAC does not plead their contents, dates, authors, signatories, or false statements. If the alleged false records are billing records, the SAC does not identify the relevant bills, codes, submissions, dates, amounts, or payors except for the limited M.A. Medicare Summary Notice. If the alleged false statements are statements to patients or government programs, the SAC does not identify who made them, to whom, when, or where.

Rule 9(b) requires the "time, place, and specific content" of the false representations and an explanation of what was false or misleading and why. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007); *Vess*, 317 F.3d at 1106. The SAC does not provide that for Count II. Count II should be dismissed.

### F. The SAC Still Fails to Plead an FCA Conspiracy

Count III is still a conclusory conspiracy claim. The Court dismissed the FAC's conspiracy claim because, where no principal FCA violation is stated, there can be no FCA conspiracy claim. (Dkt. No. 189 at 10-11). That remains true because the SAC still fails to plead a substantive FCA violation.

The conspiracy claim also fails independently. The Court's prior Order cited authority holding that an FCA conspiracy claim fails absent false and material claims

submitted to the government, (*id.*), and the SAC still does not identify the false claim that any Moving Defendant supposedly agreed to submit. The SAC alleges that unnamed or partially named recruiters such as “Tina,” “Angelica,” and “Guillermo A. Ramirez” solicited patients, and it alleges that recruiters provided Medicare numbers to hospice companies for kickbacks, referral fees, or other compensation. (Dkt. No. 190 ¶¶ 33-34). But it does not allege that any Moving Defendant formed an agreement with any recruiter, when any Moving Defendant formed an agreement with any recruiter, what the terms were, what communications occurred, what payments were made, which patient was tied to which recruiter, or which false claim was submitted as a result.

A conspiracy claim requires more than the word “conspired.” *Iqbal*, 556 U.S. at 678–79. It requires facts supporting the existence of an agreement and each defendant’s role in the scheme. *Corinthian Colleges*, 655 F.3d at 997–98. The SAC supplies neither.

### G. The California False Claims Act Claim Fails for the Same Reasons

The SAC’s California False Claims Act claim is predicated on the same facts as the federal FCA claims. (Dkt. No. 190 ¶ 86). The Court previously held that the CFCA was modeled on the federal FCA, that courts turn to federal FCA case law for guidance, and that CFCA claims must satisfy Rule 9(b). (Dkt. No. 189 at 11).

Because the SAC fails to plead the federal FCA claims with particularity, the CFCA claim fails too. The SAC also fails to identify any particular Medi-Cal claim submitted by any Moving Defendant, any date of submission, any amount paid, or any false record or statement directed to a California program. Count IV should be dismissed.

### H. The SAC Should Be Dismissed With Prejudice

Dismissal should now be with prejudice. Relator has had three opportunities to plead a viable claim. He was placed on notice of Defendants’ arguments by the first

motion to dismiss, then placed on notice again by Defendants' motion to dismiss the FAC, then received a detailed order from this Court identifying the FAC's deficiencies.

The SAC proves that further amendment would be futile. Relator added what he could: an exhibit list, one Medicare Summary Notice, Noridian materials for one patient, and unrelated bankruptcy documents. Those additions still do not plead false claims, false records, scienter, conspiracy, or defendant-specific misconduct with Rule 9(b) particularity.

The Ninth Circuit repeatedly affirms dismissal with prejudice where a plaintiff fails to cure identified defects after prior amendment. In *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), the court held that failure to correct deficiencies in a second amended complaint is "a strong indication that the plaintiffs have no additional facts to plead" and affirmed dismissal with prejudice because plaintiffs had made their "best case" and still failed to satisfy Rule 9(b). In *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011), the Ninth Circuit affirmed dismissal with prejudice where plaintiffs continued to make "everyone did everything" allegations after the court had instructed them to plead each defendant's conduct; plaintiffs had "three bites at the apple," and the district court acted within its discretion in denying a fourth. And in *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013), the Ninth Circuit affirmed denial of leave to amend where plaintiffs had "ample opportunity" to plead properly but failed to comply with the court's specific instructions.

District courts in this Circuit apply the same rule. In *Welgus v. TriNet Group, Inc.*, No. 15-cv-03625-BLF, 2017 WL 6466264, at *21-23 (N.D. Cal. Dec. 18, 2017), the court dismissed a second amended complaint with prejudice where the plaintiff added few material allegations and failed to cure the deficiencies laid out in the prior dismissal order, concluding that further amendment would be futile. In *Oceanside Organics v. County of San Diego*, 341 F. Supp. 3d 1129, 1146–47 (S.D. Cal. 2018),

the court likewise denied leave to amend after repeated failures to cure known factual deficiencies despite in-depth prior orders explaining the basis for dismissal.

Those authorities fit this case. The Court previously granted leave because it was "not clear that amendment would be futile" and because that was the first time the Court had analyzed Relator's claims. (Dkt. No. 189 at 12). That rationale no longer applies. Relator has now amended after the Court identified the precise defects, and the SAC still does not plead a viable claim.

Further leave would reward precisely what Rule 9(b) is designed to prevent: using fraud allegations as a ticket to discovery in search of the facts needed to plead fraud. *Bly-Magee*, 236 F.3d at 1018–19. Because Relator's newest pleading confirms that the missing facts do not exist—or, at minimum, that Relator still cannot plead them—dismissal should now be with prejudice.

## V. CONCLUSION

Relator's SAC is his third attempt to plead this case, and it still fails. The Court identified the defects in the FAC, and the SAC does not cure them. Relator still has not pleaded particularized false claims, still has not tied specific false claims to specific Moving Defendants, still has not pleaded nonconclusory scienter, still has not pleaded false records or statements with particularity, still has not pleaded an FCA conspiracy, and still has not pleaded a viable California False Claims Act claim.

Relator's own professional status – as he attempts to do by continually referencing his alleged qualifications in the SAC – cannot cure that gap. Critically, the relevant time period for the harm proffered by Relator falls largely within the period during which the Relator's medical license was subject to active disciplinary probation imposed by the Medical Board of California for misconduct rising to the level of gross negligence, repeated negligent acts, incompetence, and failure to maintain adequate and accurate medical records—including, most recently, findings that he improperly prescribed and inadequately monitored high-dose opioids for three patients and violated multiple terms of his previous probation. *See Decl. of Derrelle Janey in*

*Support of Defendants' Motion to Dismiss the Second Amended Complaint*, Exs. A-B. The Board's July 30, 2019 Decision and Order revoked Dr. Lifschutz's medical license, stayed that revocation, and placed him on probation for four years effective August 29, 2019, following a stipulated settlement. *Id.* at Ex. A. Subsequently, by Decision dated June 28, 2024, the Board found additional causes for discipline—including gross negligence, repeated negligent acts, failure to maintain adequate records, and general unprofessional conduct—as well as probation violations, and extended Dr. Lifschutz's probation for an additional three years (until 2027) under the same terms and conditions. *Id.* at Ex. B. The Court may properly consider these circumstances on a motion to dismiss because they are a matter of public record, and judicial notice of these filings is appropriate under Fed. R. Evid. 201(b)(2). *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (courts may take judicial notice of "undisputed matters of public record."); *Elec. Waveform Lab, Inc. v. EK Health Servs.*, No. CV158061DMGRAOX, 2016 WL 1622505, at *2 (C.D. Cal. Mar. 1, 2016) (same).

Defendants need not ask the Court to resolve credibility on a motion to dismiss; the point is narrower and dispositive: Relator's say-so that patients were not terminal, without particularized facts showing falsity and scienter as to actual claims, is not Rule 9(b) pleading.

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Second Amended Complaint in its entirety as to Moving Defendants, with prejudice, pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: New York, New York
July 29, 2026

OLSHAN FROME WOLOSKY LLP

By: */s/ Derrelle Janey*

Derrelle Janey (*admitted pro hac vice*)
1325 Avenue of the Americas
New York, New York 10019
Tel: (212) 451-2300
Fax: (212) 451-2222
Email: djaney@olshanlaw.com

Dated: New York, New York
July 29, 2026

GOTTLIEB TOWNSEND

By: */s/ Kaylee S. Kreitenberg*

Kaylee S. Kreitenberg, CA SBN 331081
644 S. Figueroa Street, Ste 200
Los Angeles, CA 90017
T: (212) 566-7766, F: (212) 428-6755
Email: kk@gottliebtownsend.com

*Attorneys for Defendants Kaysan Ghasseminejad; Relyable Hospice Care, Inc.; Toluca Hospice Care, Inc.; Med Plus; Aim Hospice Care, Inc.; VIP Hospice Care, Inc.; Millennium Hospice Care, Inc.*