Kaylee S. Kreitenberg CA SBN 331081
ROBERT C. GOTTLIEB
& ASSOCIATES PLLC
644 S. Figueroa Street, Ste 200
Los Angeles, CA 90017
T: (212) 566-7766, F: (212) 428-6755
Email: kk@gottliebtownsend.com

Derrelle Janey (*admitted pro hac vice*)
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019
T: (212) 451-2300, F: (212) 451-2222
Email: djaney@olshanlaw.com

*Attorneys for Defendants Kaysan Ghasseminejad; Relyable Hospice Care, Inc.; Toluca Hospice Care, Inc.; Med Plus; Aim Hospice Care, Inc.; VIP Hospice Care, Inc.; Millennium Hospice Care, Inc.*

U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA AND STATE OF CALIFORNIA EX REL. HARRY LIFSCHUTZ, M.D., an individual,<br><br>Plaintiff,<br><br>v.<br><br>KAYSAM GHASSEMINJEAD, an individual; KENNETH CARVER, an individual; SANDRA MAGADA, an individual; DARHIAZEL RAMIREZ, an individual; MED PLUS, a California corporation; HOSPICE CARE, INC., a California corporation; AIM HOSPICE CARE, INC., a California corporation; | NO. 2:21-cv-05328-JFW-MAR<br><br>**REPLY IN FURTHER SUPPORT OF DEFENDANTS KAYSAN GHASSEMINEJAD, RELYABLE HOSPICE CARE, INC., MED PLUS, AND VIP HOSPICE CARE, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

MERIT HOSPICE CARE INC., a California corporation; MILLENNIUM HOSPICE CARE, INC., a California corporation; BLUE HEAVEN HOSPICE & PALLIATIVE CARE, INC., a California corporation; VIP HOSPICE CARE, INC., a California corporation; RELYABLE HOSPICE CARE, INC., a California corporation; TOLUCA HOSPICE CARE, INC., a California corporation; GATES TO PARADISE HOSPICE CARE, INC., a California corporation; THOUSAND OAKS HOSPICE CARE, INC., a California corporation; MOUNT OLIVES HOSPICE, INC., a California corporation; HEALTHY LIFE HOSPICE, INC., a California corporation; BAGRAT LOBZHANIDZE aka BAGRAT LONZHANIDZE, an individual; and DOES 1-100, inclusive,

Defendants.

## Table of Contents

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The SAC Still Fails to Plead False Claims with Particularity or Reliable Indicia, and Relator's Opposition Confirms It .......... 2

1. Exhibit B Does Not Satisfy This Court's Order .......... 2

2. Relator's "Reliable Indicia" Theory Collapses Upon Examination .......... 4

3. Relator's Admission That He Lacks Claims Data Is Fatal .......... 5

4. The "Medicare or Medi-Cal" Equivocation Remains Fatal .......... 6

B. The SAC Still Fails to Plead Particularized Fraud Against Each Moving Defendant .......... 6

1. Relator's "Wheel Conspiracy" Theory Does Not Excuse Group Pleading .......... 6

2. VIP Remains Virtually Unpleaded .......... 7

C. The SAC Still Fails to Plead Scienter .......... 7

1. Bankruptcy Testimony About Revenue Is Not Scienter .......... 7

2. Officer Titles and "Control" Are Still Not Facts .......... 8

3. "Manifestly Not Terminal" Is Conclusory Without Supporting Facts .......... 9

D. The False Records Claim (Count II) Still Fails .......... 10

E. The Conspiracy Claim (Count III) Still Fails .......... 10

F. The California False Claims Act Claim (Count IV) Fails for the Same Reasons .......... 11

G. Dismissal With Prejudice Is Required ........ 11

III. CONCLUSION ........ 12

# Table of Authorities

Page(s)

## CASES


*Anyang Xinyi Elec. Glass Co. v. B & F Int'l (USA) Inc.*, No. CV1500862BROAJWX, 2016 WL 7435482 (C.D. Cal. Aug. 4, 2016) .......... 1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 9, 10

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) .......... 3, 12

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) .......... 2

*Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) .......... 6, 11

*Ebeid ex rel.United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) .......... 4, 5

*Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201 (9th Cir. 2019) .......... 1, 4

*Grell v. Laci Le Beau Corp.*, 73 Cal. App. 4th 1300 (Cal. Ct. App. 1999) .......... 1

*Harris v. Cnty. of Orange*, 682 F.3d 1126 (9th Cir. 2012) .......... 5

*Kelly v. Denault*, 374 F. Supp. 3d 884 (N.D. Cal. 2018) .......... 8

*Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020) .......... 11

*U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996) .......... 1, 3

*United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166 (9th Cir. 2006) .......... 8

*United States ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362 (C.D. Cal. 2014) .......... 6

*United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667 (9th Cir. 2018) .......... 6

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .......... 10

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .......... 11

## Statutes

California False Claims Act, Cal. Govt. Code §§ 12650 et seq. .......... passim

False Claims Act, 31 U.S.C. § 3729, et seq. .......... passim

Revenue and Taxation Code § 23301 .......... 1

## Rules

Fed. R. Civ. P. 8 .......... passim

Fed. R. Civ. P. 9 .......... passim

Fed. R. Civ. P. 12 .......... 12

Fed. R. Evid. 201 .......... 5

## I. INTRODUCTION

Relator Harry Lifschutz's ("Relator") Opposition to defendants Kaysan Ghasseminejad,[1] Relyable Hospice Care, Inc., Med Plus, and VIP Hospice Care, Inc.'s (collectively, the "Moving Defendants")[2] Motion to Dismiss the Second Amended Complaint (Dkt. No. 193, the "Opposition") is a master class in misdirection. It devotes thirty pages to mischaracterizing this Court's prior Order and misrepresenting what the Second Amended Complaint (Dkt. No. 190, the "SAC") actually pleads.

The core problem with Relator's SAC is simple and unchanged: after **three** pleading attempts, Relator still cannot identify, with the particularity Rule 9(b) demands, a **single** false claim submitted by any Moving Defendant (or any other Defendant). Instead, Relator asks this Court to accept his fiction surrounding the SAC's Exhibit B, allegedly a two-page excerpt of an Explanation of Benefits for **one** patient that fails to include the information he alleges it states, as a substitute for the particularized facts this Court told him he must plead. But, Relator's Exhibit B does not amount to a false claim, let alone establish "reliable indicia that lead to a strong inference that claims were actually submitted," as the 9th Circuit requires. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1209 (9th Cir. 2019).

Moreover, every argument in the Opposition reduces to the same fallacy: enrollment in hospice necessarily means a false claim was submitted; payment necessarily means fraud occurred; and corporate ownership necessarily means scienter. The False Claims Act demands more, as this Court has pointed out and the case law in this circuit makes clear. *See U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265 (9th Cir. 1996) (agreeing with the District Court that: "[I]t is not the case that any breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the [False Claims Act]."). Instead, here, Relator's Opposition offers rhetoric whereas Rule 9(b) demands facts.

---

[1] The SAC incorrectly spells Defendant Kaysan Ghasseminejad's name as "Kaysam Ghasseminjead."

[2] The undersigned counsel also represents entity defendants Toluca Hospice Care, Inc., Aim Hospice Care, Inc., and Millennium Hospice Care, Inc. Although the Motion to Dismiss posits arguments that likewise apply to these defendants, these entities are currently suspended by the Franchise Tax Board and, for this reason, they are prohibited by law from defending themselves in this action. *See* Revenue and Taxation Code § 23301; *Anyang Xinyi Elec. Glass Co. v. B & F Int'l (USA) Inc.,* No. CV1500862BROAJWX, 2016 WL 7435482, at *4 (C.D. Cal. Aug. 4, 2016) (*citing Grell v. Laci Le Beau Corp.*, 73 Cal. App. 4th 1300, 1306 (Cal. Ct. App. 1999)). As such, counsel is unable to move on their behalf.

Accordingly, the Opposition should be rejected in full, and the SAC should be dismissed with prejudice. There cannot be any further bites at the proverbial apple for Relator. The cost to the court and to Defendants by tolerating these shenanigans is not in the interest of justice.

## II. ARGUMENT

### A. The SAC Still Fails to Plead False Claims with Particularity or Reliable Indicia, and Relator's Opposition Confirms It

#### 1. *Exhibit B Does Not Satisfy This Court's Order*

Like the complaints before it, the SAC fails to plead a false claim. Relator stakes his entire case on Exhibit B—a two-page **excerpt** of what is misleadingly described as a six-page Explanation of Benefits for a single patient, M.A. The Opposition's reliance on this fragment is misplaced for multiple, independent reasons.

**First**, Exhibit B is a two-page exhibit purportedly of an Explanation of Benefits for patient M.A. (the name of the patient is redacted) that is facially incomplete and appears to be portions of two separate documents combined to give the illusion that they are one. (Dkt. No. 190 at Ex. B). The header of the first page of the exhibit identifies it as "page 1 of **6**" and states that this letter is for claims processed between **September 22, 2020 and December 21, 2020**. (*Id.*). The header of the second page identifies it as "page 3 of **4**" and reflects claims processed for a *different* time period than the first page: between **September 1, 2020 and September 21, 2020**. (*Id.*). It is clear that the two pages belong to two entirely different documents since they expressly state that they come from documents of completely different page counts, one from a six page document and one from a four page document, and reflect claims for completely different time periods. (*Id.*). And, nonetheless, Relator attaches only two pages (a single page from each document), which confirms that **neither** document is attached in their entirety. (*Id.*). The Opposition dismisses this defect as going "at most to evidentiary weight" (Dkt. No. 193 at 28), as opposed to a deficiency in their factual allegation. Relator is misguided. On this point, Relator conflates a summary-judgment standard with the pleading-stage requirements.

At the motion-to-dismiss stage, the Court need **not** credit allegations that are contradicted or unsupported by the exhibits attached to the complaint. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We are not, however, required

to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (internal citation omitted). Relator cannot use a deliberately misleading, selective excerpt to smuggle in "facts" that the document itself does not contain. Specifically, the SAC alleges that Exhibit B states: (i) that Relator's own claims were denied; (ii) that the reason for the denial was hospice enrollment of the patient; and (iii) that the claim paid to a Moving Defendant was a false claim. But none of these appear anywhere on the excerpted Exhibit B. (Dkt. No. 190 at Ex. B). Indeed, nowhere on Exhibit B are: Relator's name, practice, or submitted claims; the footnote that the SAC alleges expressly states that his claim was denied because the patient was enrolled in hospice; or any indication that the claim paid to one Moving Defendant was false. Relator therefore cannot–as he attempts–credibly allege to have learned of the "fraud" from this two-page excerpt. For that reason, the Court should disregard these allegations in the SAC, which are wholly unsupported by Exhibit B. *Daniels-Hall*, 629 F.3d at 998.

**Second**, even crediting the two pages attached, Exhibit B does not plead a *false* claim. It shows that Medicare paid Med Plus $2,966.78 for a hospice claim. That a claim was *paid* is not, by itself, a False Claims Act violation. *Hopper*, 91 F.3d at 1265. As this Court said in dismissing Relator's First Amended Complaint, "[t]he allegations must set forth **more than neutral facts necessary to identify the transaction**." (Dkt. No. 189 at 7 (internal citation omitted)). To state an FCA claim, Relator must plead *why* the claim was false—*i.e.*, what false certification was made, who made it, when it was made, what it said, why it was false when made, and how each Moving Defendant knew it was false. *See e.g., Bly-Magee v. California*, 236 F.3d 1014, 1018–19 (9th Cir. 2001). Further, these factual bases must not be conclusory. *Id*.

Despite these mandatory guidelines, the SAC merely rattles off the requirements for a claim in conclusory fashion based on Relator's speculation of what "would have" happened. (Dkt. No. 190 ¶¶ 33-36). Rule 9 expressly requires more. Here, Relator appears to forget that it is his burden, even at the pleading stage, to properly allege a false claim was made, based on non-conclusory factual allegations.

**Third**, Relator claims he knows the falsity of the claim paid in Exhibit B because Dr. Lavian "never saw" patient M.A. (*Id.* at ¶ 47). The problem with this

posture is that the argument rests entirely on information and belief: Relator's armchair speculation, unsupported by any identified witness, medical record, document, communication, or even a declaration from patient M.A. (*Id.*). That is precisely the type of conclusory, unsubstantiated allegation this Court already held insufficient. (Dkt. No. 189 at 8). It is indeed clear that Relator's conclusions are unsubstantiated because, despite claiming, upon information and belief, that Dr. Lavian must have knowingly conspired with Defendants to enroll the alleged patients in hospice, he does not name Dr. Lavian as a defendant in the SAC or at any of his previous attempts.

### 2. *Relator's "Reliable Indicia" Theory Collapses Upon Examination*

Relator argues that the SAC **now** provides "reliable indicia" in accordance with *Ebeid ex rel.United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) and *Godecke*, 937 F.3d 1201. (Dkt. No. 193 at 5-6). However, a cursory review shows that the Relator is misguided still.

In *Godecke*, the relator was an *insider*, namely, the former Director of Medicare Cash and Collections for the manufacturer, who had direct access to the defendant's internal billing databases, Rental Order Entry ("ROE") numbers, internal reports, and billing/appeals data that allowed her to cross-reference specific claims lacking required documentation. 937 F.3d at 1207–10. The Ninth Circuit credited those allegations because the relator could identify *specific identifiers tied to specific false claims* and could explain precisely how she knew those claims were submitted without required documentation. *Id.* at 1209.

Relator here is nothing like the *Godecke* relator. He is an *outsider* who *admits* he has no claims data. (Dkt. No. 148 at 2). He cannot identify claim numbers, billing codes, submission dates, payment dates, certifying physicians' actual statements, or the content of any certification. His Exhibit A chart, which he claims is his claims data, is a self-created spreadsheet listing patient initials—it is not a government record, not a billing record, and not a claims database. (Dkt. No. 190 at Ex. A). It identifies no source, no custodian, and no basis for reliability. (*Id.*). It is the modern equivalent of the generalized allegations that *Ebeid* found insufficient.

Relator's heavy reliance on *Ebeid* is ironic because the Ninth Circuit in that case ultimately ruled *against* the relator—on many of the same grounds applicable here. In

*Ebeid*, the relator advanced a theory of implied false certification, arguing that submission of claims for reimbursement implied compliance with governing federal rules that were preconditions to payment. 616 F.3d at 998-99. The Ninth Circuit recognized the viability of the implied certification theory but affirmed dismissal because the relator "fail[ed] to plead fraud with sufficient particularity to satisfy the pleading standard under Federal Rule of Civil Procedure 9(b)." *Id.* at 996. The court found the relator's allegations "conclusory" because they "lack[ed] any details or facts of the financial relationship or alleged referrals" underlying the fraud. *Id.* at 1000. Further, the Ninth Circuit held that "[t]o jettison the particularity requirement simply because it would facilitate a claim by an outsider is hardly grounds for overriding the general rule, especially because the FCA is geared primarily to encourage insiders to disclose information necessary to prevent fraud on the government." 616 F.3d at 999. That is precisely what Relator asks this Court to do—waive Rule 9(b) because he admits he lacks the data and information to comply with it. The law does not permit it.

### 3. *Relator's Admission That He Lacks Claims Data Is Fatal*

Relator attempts to sidestep his prior representation to this Court that he "did not have any claims data." (Dkt. No. 148 at 2). In the Opposition brief, Relator argues this admission is an "extrinsic representation" that the Court cannot consider. (Dkt. No. 193 at 29). Wrong. The document containing the concession is part of the **filed** record in this federal action, and the Court may properly take judicial notice of it. Fed. R. Evid. 201; *see e.g., Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

Further, the admission is independently confirmed by the SAC itself. The SAC states: "[w]ithout resort to discovery or a Court Order," Relator "currently cannot state which patients had their claims paid entirely through Medicare, Medicaid, or some combination of both." (Dkt. No. 190 ¶ 50). In other words, Relator concedes that he *still does not know which government program paid which claim, for which patient, to which entity, or on what date*. That is a fatal concession. This Court already held that failure to differentiate Medicare from Medi-Cal was insufficient. (Dkt. No. 189 at 8). The SAC repeats the same deficiency verbatim, and the Opposition offers no cure—only the excuse that the information is "within Defendants' and/or the government's control." (Dkt. No. 190 ¶ 50).

Rule 9(b) does not permit a relator to plead on information and belief first and search for claims later. As this Court correctly held in dismissing the First Amended Complaint: "[P]leading fraud based on information and belief normally does not satisfy Rule 9(b). . . . Even in contexts where the information is exclusively within the defendant's possession, a party still must provide the factual basis for its belief." (Dkt. No. 189 at 8). This rule applies with identical force here.

4. ***The "Medicare or Medi-Cal" Equivocation Remains Fatal***

The Opposition's attempt to distinguish *United States ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1407 (C.D. Cal. 2014) fails. The Opposition argues that the SAC "identifies the government programs being defrauded and pleads reliable indicia of submission to that program." (Dkt. No. 193 at 15). But the SAC's own language contradicts this argument: stating that "Medicare *or* Medi-Cal was paying for hospice care." (Dkt. No. 190 ¶ 44(a) (emphasis added)). That equivocation—"or"—is not pleading; it is Relator guessing. Indeed, as explained above, Relator expressly pleads that he "currently cannot state which patients had their claims paid entirely through Medicare, Medicaid, or some combination of both…." (Dkt. No. 190 ¶ 50). This is the same pleading deficiency this Court already identified and held fatal. (Dkt. No. 189 at 8).

**B. The SAC Still Fails to Plead Particularized Fraud Against Each Moving Defendant**

1. ***Relator's "Wheel Conspiracy" Theory Does Not Excuse Group Pleading***

Rule 9(b) "does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (internal quotation omitted). The Opposition invokes *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018), arguing that because the hospice entities are "spokes" of a "wheel" around Ghasseminejad, Relator need not differentiate allegations. (Dkt. No. 193 at 25–26). That argument fundamentally misapplies *Silingo*.

*Silingo* held that "a complaint need not distinguish between defendants that had the exact same role in a fraud." 904 F.3d at 677. But *Silingo* presupposed that the complaint *first adequately pleaded the fraud itself*. *Id*. Here, the SAC has not pleaded

*any* false claim with Rule 9(b) particularity. A wheel-conspiracy theory does not eliminate the foundational requirement of pleading a false claim in the first instance. Relator cannot avoid the "who, what, when, where, and how" requirement by labeling the deficiency a "wheel."

Moreover, this Court already rejected Relator's group pleading in dismissing the First Amended Complaint, holding: "group pleading remains impermissible under both Rule 8 and Rule 9(b)." (Dkt. No. 189 at 9). As the Court warned Relator: "[a] plaintiff fails to comply with Rule 8 if 'all defendants are lumped together in a single, broad allegation.'" (Dkt. No. 189 at 6). That is exactly what the SAC continues to do throughout, including in each Count, which still alleges that "Defendants, by and through their officers, agents, employees, related companies, subsidiaries and holding companies" knowingly acted. (Dkt. No. 190 ¶¶ 63, 71, 80, 88). The references to "Defendants" throughout the SAC refer collectively to more than 15 unrelated entities and individual defendants and 100 unnamed Doe Defendants, with zero attempt to differentiate between them in each Count. That alone is fatal. (Dkt. No. 189 at 9).

2. ***VIP Remains Virtually Unpleaded***

The Opposition claims that the SAC "now identifies VIP's NPI, two specific patients (H.L. and A.M.), their enrollment dates, and their non-terminal conditions" for which Relator treated the patient. (Dkt. No. 193 at 26). But listing a defendant's name next to two patient initials on a self-created chart is not particularized fraud pleading under Rule 9(b). The SAC still pleads no claim number, billing code, payment amount, payment date, false certification, or *any factual basis* showing that VIP knowingly submitted any false claim for either patient or any other patient. That omission is dispositive.

**C. The SAC Still Fails to Plead Scienter**

1. ***Bankruptcy Testimony About Revenue Is Not Scienter***

The Opposition's centerpiece scienter argument is that Defendant Ghasseminejad testified in an **unrelated** bankruptcy proceeding that his hospice companies generated approximately $1 million per month. (Dkt. No. 193 at 24–25). But revenue is not fraud. Earning revenue from hospice services does not establish, or even suggest, that those services involved false claims. Thousands of legitimate hospice providers generate revenue without committing fraud. Under the FCA,

scienter requires that a defendant act "knowingly," which includes "actual knowledge," "deliberate ignorance," or "reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). As the court clarified in *Kelly v. Denault*, 374 F. Supp. 3d 884 (N.D. Cal. 2018), "a palpably false statement, known to be a lie when it is made, is required for a party to be found liable under the False Claims Act," (citing *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006)).

Testimony stemming from the bankruptcy proceedings does not show that Ghasseminejad knew any identified patient was not terminal, saw or approved any allegedly false certification, directed or caused any false claim, communicated with any recruiter or certifying physician about any patient, or knew that any claim was false or fraudulent. They show only that he owned companies and earned money—which is lawful.

2. ***Officer Titles and "Control" Are Still Not Facts***

Despite this Court's clear instruction that "conclusory allegations of direction, operation, or control" are "insufficient" and that "officer titles" do not "allege particular actions," (Dkt. No. 189 at 8–9), the SAC continues to rely on the same formulation that Ghasseminejad:

> [a]s the sole owner, chief executive officer, managing member, and/or principal officer of those entities, he exercised authority over Medicare enrollment, maintenance of billing privileges, patient admissions, billing operations, corporate finances, and the accounts into which government reimbursements were deposited. Because the submission of Medicare hospice claims necessarily required provider enrollment, maintenance of billing privileges, supervision of billing personnel, and control over the entities' financial operations, those functions were within Ghasseminejad's exclusive authority.

(Dkt. No. 190 ¶ 58). Based only on Ghasseminejad's officer titles, Relator leaps to the conclusion that he "knowingly executed, authorized, directed, approved, or caused" the submission of the alleged false claims. (Dkt. No. 190 ¶ 59). That is a recitation of

elements, not a statement of facts, and, as such, should be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 3. *"Manifestly Not Terminal" Is Conclusory Without Supporting Facts*

The Opposition argues that Relator's medical judgment as one of the patients' treating physician is sufficient to allege non-terminal status. (Dkt. No. 193 ¶¶ 43, 96(c)). But Relator's short diagnostic labels—"arthritis," "headaches," "vascular disease," "back pain," "varicose veins"—identify only the conditions *he says **he** treated*. (*Id.* at Ex. A). They do not establish the patients' *complete* medical condition, do not identify the medical basis on which hospice enrollment was sought, and do not establish why any hospice certification was false *when made*. After all, despite alleging that he was the PCP for each of the patients, he does not allege that he was their **only** doctor. Indeed, patients are not limited to their PCP for all of their medical needs.

Moreover, Relator's own professional competence is in serious question. The Medical Board of California found cause for discipline based on gross negligence, repeated negligent acts, failure to maintain adequate records, violations of the Medical Practice Act, and general unprofessional conduct. Relator's bare say-so that patients were "manifestly not terminal" is not Rule 9(b) pleading—it is precisely the type of unsupported, conclusory assertion that this Court has already twice rejected.

Relator tries to argue that the Court should disregard his lengthy and serious disciplinary record that is publicly filed with the Medical Board of California (attached at Dkt. No. 192 at Exs. A-B) as an "improper attack on Relator's character." (Dkt. No. 193 at 7). Not so. The SAC attempts to support very serious claims against the Moving Defendants on **only** Relator's alleged review of his records. Yet, among other things, Relator's medical license is the subject of **active disciplinary probation** imposed by the Medical Board of California for failure to maintain **adequate and accurate medical records**. (Dkt. No. 192 at Exs. A-B). On his sole review of those very records, Relator asks this Court to grant him full credibility and eschew the heightened pleading standards. Nothing warrants this extraordinary relief, especially not Relator's questionable reputation and sanctioned conduct for "maintain[ing] adequate and accurate medical records." (*Id.*).

**D. The False Records Claim (Count II) Still Fails**

The Opposition argues that the "false records" are the fraudulent medical certifications of terminal illness, and the resulting hospice claims and per-diem billings submitted to Medicare and Medi-Cal, that "must have" occurred if a patient was enrolled in hospice. (Dkt. No. 193 at 26–27). But Rule 9(b) requires the "time, place, and specific content of the false representations and an explanation of what was false or misleading and why." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citation omitted). Indeed, the SAC does not include any allegations that Relator ever saw **any** medical certifications of terminal illness. The SAC, likewise, does not plead the content of any certification, the date any certification was signed, what any certification stated about any patient's prognosis, or *why* any certification was false when made. Asserting upon information and belief that Dr. Lavian "conspired to knowingly provide fraudulent medical certifications to government agencies" without any supporting factual basis does not satisfy this standard. (Dkt. No. 190 ¶ 47). The same deficiencies apply for the hospice claims and per-diem billings submitted to Medicare and Medi-Cal that Relator speculates must have followed. (Dkt. No. 193 at 26–27).

**E. The Conspiracy Claim (Count III) Still Fails**

The Opposition argues that the conspiracy predicate is cured because the SAC now states a substantive FCA violation. (Dkt. No. 193 at 27). It does not, for the reasons set forth above. Moreover, the conspiracy claim fails independently because the SAC does not allege when any agreement was formed, between whom, on what terms, what communications occurred, or what overt acts were taken in furtherance of the conspiracy. *Iqbal*, 556 U.S. at 678–79. Alleging in conclusory fashion and upon information and belief that "Tina," "Angelica," and "Guillermo A. Ramirez" recruited patients, that the hospice companies obtained fraudulent certifications from a physician who never saw the patients, and that the Moving Defendants and the physician conspired to knowingly provide fraudulent medical certifications to government agencies, is not enough. *Id*. As explained in the opening brief, a conspiracy claim requires more than the word "conspired." (Dkt. No. 191 at 16-17). For this reason and those in the opening brief, the conspiracy claim warrants dismissal.

### F. The California False Claims Act Claim (Count IV) Fails for the Same Reasons

Relator relies on the assertion that the SAC remedies the deficiencies as to the federal FCA claims and thus rescues the CFCA claim (Dkt. No. 193 at 27), but as detailed above, the federal claims remain insufficient. Because the SAC fails to plead the federal FCA claims, the CFCA claim—predicated on the same deficient facts—fails as well. (Dkt. No. 189 at 11).

### G. Dismissal With Prejudice Is Required

The Opposition requests either denial of the Motion or, alternatively, leave to amend again. (Dkt. No. 193 at 29). This Court should dismiss this complaint with prejudice—never to be resurrected again.

The Ninth Circuit's precedent is clear. In *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), the court affirmed dismissal with prejudice where the plaintiff "failed to correct these deficiencies in its Second Amended Complaint," finding that this failure "is 'a strong indication that the plaintiffs have no additional facts to plead.'" The court held that "it was clear that the plaintiffs had made their best case and had been found wanting." *Id.* The court further emphasized that the allegations of scienter, "though voluminous, [were] not pled with the particularity," where plaintiff only "compil[ed] a large quantity of otherwise questionable allegations." *Id.* at 1008.

In *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011), the Ninth Circuit affirmed dismissal with prejudice where the plaintiff's "second amended complaint was properly dismissed because it failed to" differentiate allegations among defendants, "continuing to make 'everyone did everything' allegations." The court held that "[p]laintiffs had three bites at the apple, and the court acted well within its discretion in disallowing a fourth." *Id.* at 958-59 (citing *Zucco Partners*, 552 F.3d at 1007).

And as the Ninth Circuit reaffirmed in *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020), "where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Id.* (quoting *Zucco Partners*, 552 F.3d at 1007).

This case fits squarely within these authorities. Relator has now filed three complaints. Each time, he has been told precisely what he must plead to satisfy Rule 9(b). Each time, he has failed to do so. He was placed on notice by the Moving Defendants' first motion to dismiss. He was placed on notice again by the Moving Defendants' motion to dismiss the First Amended Complaint. He received a detailed Order from this Court identifying each deficiency. He added what he could: a self-created chart, a partial EOB, Noridian enrollment dates, and irrelevant bankruptcy documents. Those additions still do not identify false claims, false records, scienter, conspiracy, or defendant-specific misconduct with Rule 9(b) particularity.

The reason is obvious: Relator cannot plead what he does not have. He admitted to this Court that he lacks claims data. The SAC confirms he still lacks claims data. Relator likewise has no information relating to the scienter of any Defendant and no information relating to the roles of any Defendants in the alleged conspiracy or submission of false claims. No further amendment will change that fundamental reality. Granting leave would reward precisely what Rule 9(b) is designed to prevent—"using fraud allegations as a ticket to discovery in search of the facts needed to plead fraud." *Bly-Magee*, 236 F.3d at 1018–19.

## III. CONCLUSION

For the foregoing reasons, Moving Defendants respectfully request that this Court GRANT the Motion to Dismiss and dismiss the Second Amended Complaint in its entirety as to Moving Defendants, **with prejudice**, pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: New York, New York
August 28, 2026

OLSHAN FROME WOLOSKY LLP

By: */s/ Derrelle Janey*

Derrelle Janey (*admitted pro hac vice*)
1325 Avenue of the Americas
New York, New York 10019
Tel: (212) 451-2300
Fax: (212) 451-2222
Email: djaney@olshanlaw.com

Dated: New York, New York
August 28, 2026

ROBERT C. GOTTLIEB & ASSOCIATES PLLC

By: */s/ Kaylee S. Kreitenberg*

Kaylee S. Kreitenberg, CA SBN 331081
644 S. Figueroa Street, Ste 200
Los Angeles, CA 90017
T: (212) 566-7766, F: (212) 428-6755
Email: kk@robertcgottlieblaw.com

*Attorneys for Defendants Kaysan Ghasseminejad; Relyable Hospice Care, Inc.; Toluca Hospice Care, Inc.; Med Plus; Aim Hospice Care, Inc.; VIP Hospice Care, Inc.; Millennium Hospice Care, Inc.*